In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-2864

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

COREY A. WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 00-CR-40065—**J. Phil Gilbert**, *Judge.*

ARGUED JUNE 6, 2002—DECIDED AUGUST 6, 2002

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* A jury found defendant Corey Williams guilty of several counts of distribution and possession with the intent to distribute cocaine base ("crack") and of one count of conspiracy to distribute and possess with the intent to distribute more than fifty grams of crack. Williams appeals, contending that (1) there was insufficient evidence to support the conspiracy conviction; (2) the district court committed reversible error by failing to comply with 21 U.S.C. § 851(b); and (3) the district court erred in admitting statements from his proffer agreement. We affirm.

## I. History

Williams began selling crack in Mt. Vernon, Illinois some-time in 1995 and developed a business relationship with Monte Lesure. At trial, Lesure explained that for several months, he and Williams sold crack out of their cars, pooled their money to purchase crack, and traveled together to purchase additional crack when necessary. Lesure testified that during their business relationship, they sold between 500 and 1,000 grams of crack and netted approximately $36,000 in profits. At trial, the government also produced evidence of several controlled drug purchases involving Williams, which were recorded via an audio/video recorder. Additionally, several government witnesses testified about crack purchases that they made from Williams over the years.

During Williams' case-in-chief, he offered a stipulation designed to show that he was in prison and not selling drugs during various periods beginning in 1995. Williams' stated purpose in offering the stipulation was to discredit the testimony of several government witnesses who had testified that they had purchased crack from Williams or sold crack with Williams. In rebuttal, the government offered portions of Williams' proffer agreement—that is the statements Williams made during his unsuccessful plea negotiations—and the testimony of Agent Randall Nadolski, who was present during those negotiations.[1] For ex-

---

[1] The proffer agreement provided in pertinent part:

[N]o statements or information provided by your client during the "off-the-record" proffer or discussion will be used against your client in any criminal case during the government's case in chief. That is, however, the only limitation on the use the government may make of your client's statements.

[T]he government may use any statements made or other information provided by your client to rebut evidence or ar-

(continued...)

ample, Williams admitted that beginning in 1989, he purchased crack from several sources, including several government witnesses.

The jury then convicted Williams of four counts of distribution and possession with intent to distribute less than five grams of crack in violation of 21 U.S.C. § 841(a)(1) and of one count of conspiracy to distribute and possession with intent to distribute more than fifty grams of crack in violation of 21 U.S.C. § 846.

Prior to trial, the government had timely filed an information pursuant to 21 U.S.C. § 851(a), declaring that based upon Williams' two prior felony drug convictions, the government would seek to enhance his sentence if he was convicted because Williams was a repeat offender. *See* U.S.C. § 841(b)(1)(A). After the jury convicted Williams, a Presentence Investigation Report ("PSR") was prepared and outlined Williams' two prior felony drug convictions and the life sentence required by § 841(b)(1)(A). Williams responded to the PSR by stating that he

[W]as not informed of the possibilities of the filing of an information pursuant to 21 U.S.C. Section 851 to establish prior convictions or the possibilit[y] that he could face life in prison while represented by [his former counsel]. In fact, again, based upon the representations of the Defendant, COREY A. WILLIAMS to [his present attorney], he was informed by [his former counsel] that he faced 120 to 150 months in prison as a level 27, Category VI, for a 500 to 1500 gram range of crack

---

[1] (...continued)
guments materially different from any statements made or other information provided by your client. . . . In addition, we want to emphasize that the above-mentioned examples are not totally inclusive of the uses the government may make of your client's "off-the-record" proffer or discussion.

> cocaine, and was NEVER told by [his former counsel]
> that he could face more time than that.

In other words, Williams complained that his previous counsel—who withdrew before trial—had never told him that he faced the possibility of a life sentence. At sentencing, in support of his objection, Williams' then-present counsel stated that the objection spoke for itself and added that if Williams knew he was going to face a life sentence, he would have pled guilty instead of going to trial. The district court overruled Williams' objection, noting that Williams was advised at arraignment of the possibility of a life sentence.[2] The district court then adopted the PSR and its findings and imposed a life sentence on the conspiracy count and 360 months of imprisonment on four distribution counts.[3]

## II. Analysis

### A. Sufficiency of Evidence

Williams first contends that the evidence was insufficient to support a finding that he conspired to distribute more than fifty grams of crack. Normally, we review whether a jury verdict has evidentiary support in a criminal case by asking if there was sufficient evidence, when viewed in the light most favorable to the government, to allow a rational trier of fact to find all of the essential elements of an offense beyond a reasonable doubt. *See United States v. Carlino*, 143 F.3d 340, 343 (7th Cir. 1998). However, Williams did not preserve normal review of the issue because, although he moved for a judgment of acquittal at

---

[2] Before trial, the district court also explicitly told Williams that he faced the possibility of a life sentence on the conspiracy count.

[3] Williams was also convicted of possession of a firearm by a felon and sentenced to 120 months of imprisonment. This count is irrelevant to his appeal.

the close of the government's case, he failed to renew his motion at the close of all of the evidence. Therefore, we review Williams' claim only for plain error, which in this context is present only if his conviction amounted to a manifest miscarriage of justice. *See id.* "Manifest miscarriage of justice is perhaps the most demanding standard of appellate review. We will reverse only if the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction would be shocking." *United States v. Taylor*, 226 F.3d 593, 597-98 (7th Cir. 2000).

The government has the task of proving that Williams was part of a conspiracy. *See United States v. Albarran*, 233 F.3d 972, 976 (7th Cir. 2000). Determining that a conspiracy exists is only the first step in the process, as the government must also show that the defendant knew of the illegal objective of the conspiracy and agreed to participate in its achievement. *See id.* Here, Williams' alleged co-conspirator, Lesure, testified that he and Williams pooled their money to buy drugs for resale, traveled together to obtain drugs for resale, sold drugs together from Lesure's or Williams' automobile or their girlfriends' apartment, and together made $36,000 in profits. Lesure's testimony is more than sufficient to conclude that a conspiracy existed between Lesure and Williams to sell crack and that Williams agreed to join the conspiracy. *See id.*; *see also United States v. Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997) (upholding conspiracy conviction where defendant and co-conspirator traveled together and made drug sales to third party together).

Williams contends that the evidence only established a buyer-seller relationship between Williams and his customers, not a conspiracy between him and Lesure. Williams is correct to note that "[a] mere buyer-seller relationship is not enough to sustain a conspiracy conviction; rather there must be some evidence of jointly taken activity." *United States v. Adkins*, 274 F.3d 444, 450 (7th Cir. 2001).

However, as we discussed, Lesure's testimony establishes that Lesure and Williams conspired together to sell crack throughout Mt. Vernon. Therefore, although Williams may merely have had a buyer-seller relationship with his customers, it is clear that Williams and Lesure were involved in a conspiracy rather than a buyer-seller relationship. *Cf. id.* at 451. Therefore, Williams' challenge to his conspiracy conviction must fail.

## B. Compliance with 21 U.S.C. § 851(b)

In order to enhance a defendant's sentence due to prior convictions, the government must timely file an information under 21 U.S.C. § 851(a) describing the bases for the enhancement. Post-conviction but prior to sentencing, the district court is then required to ask the defendant whether he affirms or denies the previous convictions.[4] *See* 21 U.S.C. § 851(b). Williams contends that because the district court failed to ask him at sentencing whether he affirmed or denied his previous convictions in accordance with 21 U.S.C. § 851(b), it was error for the court to sentence him to life due to his previous convictions. The government concedes that the district court failed to comply with § 851(b) but imposed a life sentence nevertheless. The government, however, contends that any error by the district court was harmless.

The Fifth Circuit faced a similar situation in *United States v. Fragaso*, 978 F.2d 896, 902-03 (5th Cir. 1992), in which the defendant challenged the district court's failure to comply with § 851(b). On appeal, the court initially noted that the defendant "was well aware of the likelihood of enhancement from the government's pretrial

---

[4] 21 U.S.C. § 851(c) provides comprehensive procedures for challenging prior convictions used for enhancement purposes. *See*, *e.g.*, *United States v. Garcia*, 954 F.2d 273, 277 (5th Cir. 1992).

information." *Id.* at 902. Further, the convictions were outlined in the defendant's PSR and the defendant never challenged the validity of the convictions. *See id.* The court then held that the "defendant's failure to comply with the procedures of § 851(c) [for challenging prior convictions], when coupled with the absence of any suggestion the judge's omission precluded him from presenting a specific challenge to a prior conviction, amount[ed] to harmless error." *Id.* (citation and internal quotations omitted).

In the present case, as in *Fragaso*, the record establishes that the government's pretrial information informed Williams of the likelihood of the enhancement and that the PSR explicitly disclosed the bases for the enhancement. Moreover, Williams did not challenge the prior convictions at sentencing even when the government raised the issue. Further, Williams failed to comply with § 851(c), which provides the procedures for challenging prior convictions used for enhancement purposes. Thus, we must conclude that Williams had knowledge of the enhancement as well as repeated opportunity to object to the government's use of his prior convictions in the enhancement. Therefore, any error resulting from the district court's failure to comply with the procedures of § 851(b) was harmless error. *See id.*; *see also United States v. Arango-Montoya*, 61 F.3d 1331, 1339 (7th Cir. 1995) (applying harmless error standard to purported § 851(b) violation); *United States v. Hill*, 142 F.3d 305, 313 (6th Cir. 1998) (finding harmless error where "[n]otwithstanding repeated opportunity, defendant did not challenge his prior convictions before district court").

## C.  *Government's Use of Williams' Proffer*

Finally, Williams contends that the district court erred when it allowed the government to use statements he made

during his proffer in its rebuttal case and at sentencing. In *United States v. Dortch*, 5 F.3d 1056, 1066-67 (7th Cir. 1993), the defendant argued that the district court erred in allowing the government to use his proffer in its rebuttal case. On appeal, we set forth the following language from that proffer agreement:

> [N]o statements or information provided by your client during the "off-the-record" proffer or discussion will be used against your client in any criminal case during the government's case in chief. That is, however, the *only* limitation on the use the government may make of your client's statements.
>
> . . . .
>
> [T]he government may use any statements made or other information provided by your client to rebut evidence or arguments materially different from any statements made or other information provided by your client. . . . In addition, we want to emphasize that the above mentioned examples are not totally inclusive of the uses the government may make of your client's "off-the-record" proffer or discussion.

*See id.* at 1068 n.9. We initially explained that under the plain language of the proffer agreement, the only limitation on the government's use of the proffer statements was that the government could not introduce the statements during its case-in-chief. *See id.* at 1068. We then held that a defendant waives any objection to the government's use of proffered statements when the proffer agreement allows such use. *See id.*; *see also United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir. 1997) ("As a contract, a proffer agreement must be enforced according to its terms[, and] [i]t is the language of the contract that binds the parties.").

In the present case, the relevant provisions of Williams' proffer are *identical* to the proffer at issue in *Dortch*. Thus,

we have no problem concluding that Williams waived any objection to the government's use of that proffer in the government's rebuttal and at sentencing because the proffer agreement permitted such use.

### III.  Conclusion

For the foregoing reasons, Williams' convictions and sentences are AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*