PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

ERNEST JOE ELLIS,
           *Defendant-Appellant.*

No. 01-4583

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-00-197)

Argued: January 23, 2003

Decided: April 25, 2003

Before WILKINS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkins wrote the majority opinion, in which Judge Traxler joined. Judge Gregory wrote an opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED:** Denise Charlotte Barrett, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant. Deborah A. Johnston, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Thomas M. DiBiagio, United States Attorney, Greenbelt, Maryland, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Ernest Joe Ellis appeals his convictions and sentences for various drug offenses. Finding no reversible error, we affirm.

I.

In 1999 and 2000, federal and state law enforcement officers assigned to a multi-jurisdictional task force were investigating drug trafficking in an area of Prince George's County, Maryland that included the Fox Glen apartment complex (Fox Glen). During that investigation, the officers received information from multiple sources indicating that Ellis regularly distributed cocaine base at Fox Glen. On at least one occasion while conducting surveillance at Fox Glen, the officers observed Ellis—who sometimes drove a cream-colored Cadillac El Dorado—conduct hand-to-hand transactions with other individuals. The officers also learned that Ellis' Maryland driver's license had been suspended.

On March 2, 2000, FBI agents assigned to the task force observed Ellis driving the cream-colored Cadillac into the Fox Glen parking lot. The agents stopped Ellis after he pulled into the complex. During the investigation that followed, the agents searched the vehicle and found quantities of cocaine base and marijuana. Ellis was arrested, and he subsequently made statements implicating himself in narcotics trafficking. That same evening, agents searched Ellis' girlfriend's apartment, where Ellis often stayed, and found additional quantities of cocaine base and marijuana, as well as a loaded .45 caliber pistol.

A grand jury indicted Ellis for conspiracy to distribute and possess with the intent to distribute marijuana and more than 50 grams of cocaine base, *see* 21 U.S.C.A. § 846 (West 1999) (Count One); possessing more than five grams of cocaine base with the intent to distribute, *see* 21 U.S.C.A. § 841(a)(1) (West 1999) (Count Two); possessing a detectable amount of marijuana with the intent to distribute, *see id.* (Count Three); and possessing a firearm and ammunition as a convicted felon, *see* 18 U.S.C.A. § 922(g)(1) (West 2000) (Count

Four). In accordance with 21 U.S.C.A. § 851(a)(1) (West 1999), the Government filed an information stating its intent to seek enhanced penalties for Counts One and Two on the basis of Ellis' two prior felony narcotics convictions.

Ellis moved to suppress the physical evidence seized from the vehicle and his post-arrest statements. The district court determined that the agents had probable cause to stop Ellis because they had reason to believe that he was driving with a suspended license. Relying on *Whren v. United States*, 517 U.S. 806 (1996), the court further explained that because the agents had probable cause to stop Ellis for the traffic violation, any subjective intent they may have had to investigate him for narcotics activity was irrelevant to the validity of the stop. In addition, the court suggested that the observations of Ellis' narcotics activity provided an alternative basis for the stop.[1]

Following a trial, a jury convicted Ellis on all four counts. The district court sentenced Ellis to life imprisonment on Count One, to concurrent 360-month terms on Counts Two and Three, and to a concurrent 120-month term on Count Four.

## II.

Ellis first claims that the district court erred in denying his motions to suppress, arguing that the initial stop by the FBI agents was invalid because these *federal* agents lacked authority to stop him for violating a *state* traffic law.[2] In the district court, however, Ellis did not assert the FBI agents' lack of authority as a basis for suppression; rather, he argued that the stop was primarily motivated by the agents' desire to investigate him for narcotics activity. Thus, we review Ellis' claims regarding the scope of the agents' authority for plain error. *See* Fed.

---

[1] The district court also ruled that the search of the vehicle was valid and that Ellis made his post-arrest statements voluntarily. Because Ellis does not appeal those rulings, we do not address them further.

[2] Ellis also argues that the agents did not have reasonable suspicion that he was involved in narcotics activity at the time of the stop. We do not consider this argument because, as explained below, we affirm the denial of Ellis' suppression motions on the ground that the agents had probable cause to stop him based on a probable violation of state traffic law.

R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993); *see also United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995) (reviewing suppression claim not raised in district court for plain error).

To establish plain error, Ellis must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *See Olano*, 507 U.S. at 732. Even if Ellis makes this three-part showing, correction of the error remains within our discretion, which we "should not exercise . . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)) (second alteration in original).

We need not decide whether an error occurred here because we conclude that any such error was not "plain." To be plain, an error must be "clear" or "obvious," *id.* at 734 (internal quotation marks omitted), at least by the time of appeal, *see Johnson v. United States*, 520 U.S. 461, 468 (1997). An error is clear or obvious "when the settled law of the Supreme Court or this circuit establishes that an error has occurred. In the absence of such authority, decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain." *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996) (internal quotation marks and citation omitted).

Ellis contends that neither federal nor state law permits FBI agents to make a pretextual stop based on a violation of state traffic laws. However, none of the arguments raised by Ellis establishes a "clear" or "obvious" legal error.

First, while Ellis argues that *Whren* applies only to stops conducted by *state* law enforcement officers, nothing in the language of *Whren* indicates that its holding does not apply to federal agents. *Cf. United States v. Machuca-Barrera*, 261 F.3d 425, 434 n.26 (5th Cir. 2001) (citing *Whren* for the proposition that courts "do not inquire into the motives of individual Border Patrol agents in performing [checkpoint] stops").

Further, Ellis asserts that the FBI agents' authority is derived exclusively from federal statutes that permit agents to investigate fed-

eral offenses and certain violent crimes under state law. *See* 18 U.S.C.A. § 3052 (West 2000) (providing that FBI agents may "make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States"); 28 U.S.C.A. §§ 540-540B (West 1993 & Supp. 2002) (providing that upon request from state officials, FBI may investigate certain killings of state officials and employees, violent crimes against travelers, and serial killings). Ellis claims that these federal statutes preempt a Maryland statute that, in relevant part, grants federal law enforcement officers the authority to make arrests for state offenses when "[t]he officer is participating in a joint investigation with officials from any State or local law enforcement agency." Md. Ann. Code art. 27, § 594B(h)(3)(i) (1996) (repealed 2001).[3]

There is little precedent addressing whether federal agents may investigate state offenses when state law purports to grant such authority. Ellis cites *United States v. Di Re*, 332 U.S. 581, 590 (1948), which states that under federal law, FBI agents are "authorized only" to make warrantless arrests for violations of federal law. *Di Re*, however, addressed the issue of whether federal or state law governed the validity of a *state* officer's warrantless arrest for a *federal* offense, *see id.* at 588-91. The Supreme Court did not consider whether federal agents may arrest suspects for *state* violations (or, as here, investigate such violations) when state law purports to grant them that authority. Also, the few circuit decisions that have discussed this issue have expressed differing views. *Compare United States v. Green*, 797 F.2d 855, 857 (10th Cir. 1986) (stating in dicta that "[a]lthough there is no federal statute authorizing the federal [probation] officer in this case to make a warrantless arrest for the commission of Texas crimes, it is arguable that a federal officer may make such an arrest if it would be permitted under state law"), *with United States v. Prim*, 698 F.2d 972, 978 (9th Cir. 1983) (Hug, Circuit Judge, concurring) (concluding that federal statute precluded DEA agents from arresting defendant for state offense and rejecting notion that this limitation "can be avoided merely by invoking state statutes permitting warrantless arrests by private persons").

---

[3]Section 594B(h)(3)(i), which was in effect at the time of Ellis' arrest, was reenacted without any substantive change as Md. Code Ann., Crim. P. § 2-104(b)(2)(i) (2001).

Ellis also claims that "the Maryland statute is an unconstitutional infringement on the division of power between State and Federal governments and on federal executive action." Appellant's Br. at 23. We have found no appellate decision directly addressing the constitutional validity of a state statute purporting to grant federal agents the authority to make arrests for state law offenses. In arguing that the Maryland statute is unconstitutional, Ellis relies on *Printz v. United States*, 521 U.S. 898 (1997), in which the Supreme Court held invalid certain provisions of a federal law requiring state law enforcement officers to conduct background checks on prospective firearm purchasers. It is far from clear, however, that *Printz* applies to the statute at issue here, which does not *obligate* federal agents to enforce state laws, but rather, merely grants the agents discretionary authority in limited circumstances.

Ellis further argues that even if the Maryland statute permits federal agents to make *arrests* for state law offenses, it does not authorize pretextual stops based on such offenses. On its face, however, the Maryland statute allows federal agents participating in joint investigations to make arrests for state law offenses—a power that logically would seem to include the authority to investigate such offenses.

In sum, the legal issues raised by Ellis concerning the scope of the FBI agents' authority are, at best, largely undecided. Thus, any alleged error relating to these issues cannot be "plain." *See United States v. Brewer*, 1 F.3d 1430, 1435 (4th Cir. 1993) (holding that alleged error was not plain because applicable law was unsettled). The district court therefore did not plainly err in denying Ellis' motions to suppress.

### III.

Ellis next challenges the imposition of a mandatory life sentence on Count One, arguing that the district court failed to conduct the colloquy required by 21 U.S.C.A. § 851(b) (West 1999).[4] Because Ellis

---

[4]Ellis also maintains that the enhancement provision, 21 U.S.C.A. § 841(b)(1)(A) (West 1999), does not apply to conspiracy convictions under § 846. This claim is without merit. *See United States v. Irvin*, 2

did not raise this claim in the district court, our review is for plain error.

Section 851(b) provides that if the Government files an information seeking enhanced penalties for a drug offense on the basis of prior convictions,

> the court shall after conviction but before pronouncement of sentence inquire of the [defendant] whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

"This procedure provides the defendant with a full and fair opportunity to establish that he is not the previously convicted individual or that the conviction is an inappropriate basis for enhancement under section 841." *United States v. Campbell*, 980 F.2d 245, 252 (4th Cir. 1992). We agree with Ellis that the district court committed plain error in failing to comply with § 851(b). However, we conclude that the error did not affect Ellis' substantial rights.

During the sentencing hearing, defense counsel acknowledged that "[t]here were two prior felony convictions, and the applicable Federal

---

F.3d 72, 75 (4th Cir. 1993) (explaining that "the penalties established under § 841(b) apply with equal force to attempts and conspiracies to violate the object offenses set forth in § 841(a)"); *see also United States v. Walker*, 228 F.3d 1276, 1277 (11th Cir. 2000) (per curiam) ("Because possessing 50 or more grams of cocaine base is 'a violation of this subparagraph' as described in § 841(b)(1)(A) and Walker had two prior felony drug convictions, a mandatory life sentence applies for conspiring to commit a section 841(a)(1) offense.").

Ellis further challenges his sentence on Count One on the ground that the prior convictions supporting the enhanced penalty were neither alleged in the indictment nor proven to the jury beyond a reasonable doubt. As Ellis recognizes, however, this claim is foreclosed by our opinion in *United States v. Sterling*, 283 F.3d 216, 219-20 (4th Cir.), *cert. denied*, 122 S. Ct. 2606 (2002).

Code imposes and mandates a life sentence." J.A. 249. Counsel also made clear that Ellis understood these facts. And, when the court provided Ellis an opportunity to offer anything that might affect his sentence, Ellis merely asked for leniency. Thus, it is clear that even if the district court had conducted the colloquy specified by § 851(b), neither Ellis nor his attorney would have challenged Ellis' prior convictions. *See United States v. Severino*, 316 F.3d 939, 948 (9th Cir. 2003) (en banc) (holding that failure to comply with § 851(b) did not affect defendant's substantial rights because defense counsel and defendant acknowledged validity of prior conviction and its effect on sentence; thus, defendant could not "plausibly argue that he would have done anything differently, had the district court [complied with § 851(b)]"); *see also United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998) (holding that on plain error review, defendant must prove that error "actually affected the outcome of the proceedings").

We note also that Ellis did not contest the existence or validity of the prior convictions pursuant to 21 U.S.C.A. § 851(c) (West 1999). *See United States v. Williams*, 298 F.3d 688, 693 (7th Cir. 2002) (holding that failure to comply with § 851(b) was harmless error, in part because defendant did not comply with § 851(c) procedures for challenging prior convictions). And, while Ellis objected to certain findings in the presentence report, he did not object to the inclusion of the predicate convictions in his criminal history or to the determination that those convictions mandated a life sentence on Count One. *See United States v. Hill*, 142 F.3d 305, 313 (6th Cir. 1998) (holding that failure to comply with § 851(b) was harmless, in part because defendant did not object to prior convictions listed in presentence report).[5]

---

[5]On appeal, Ellis asserts for the first time that one of his predicate convictions is constitutionally invalid and thus should not have been used to enhance his sentence. Again, however, it is clear from the record that Ellis would not have raised this claim in the district court before sentencing—as he was required to do in order not to waive it—even if the court had complied with § 851(b). Thus, we do not consider the merits of this claim.

IV.

Ellis also claims that the district court erred by imposing a 30-year sentence on Count Three. Ellis correctly argues, and the Government concedes, that because no specific quantity of marijuana was charged in the indictment or proven to the jury, the 30-year sentence exceeds the statutory maximum. *See* 21 U.S.C.A. § 841(b)(1)(D) (West Supp. 2002) (providing for maximum sentence of five years, or ten years with prior conviction, for offenses involving less than 50 kilograms of marijuana); *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc), *cert. denied*, 122 S. Ct. 2296 (2002). Thus, the district court plainly erred in imposing a 30-year sentence on Count Three.

However, in light of Ellis' life sentence on Count One and concurrent 30-year term on Count Two, the error did not affect his substantial rights. *See United States v. Burns*, 298 F.3d 523, 544-45 (6th Cir.) (holding that sentencing error did not affect defendants' substantial rights because error did not result in longer total terms of imprisonment), *cert. denied*, 123 S. Ct. 614, 642, 649 (2002), *and petition for cert. filed*, No. 02-9179 (U.S. Dec. 31, 2002); *United States v. Rivera*, 282 F.3d 74, 77-78 (2d Cir. 2000) (per curiam) (explaining that because defendant was properly sentenced to life imprisonment on one count, "a concurrent sentence on other counts is irrelevant to the time he will serve in prison").[6]

V.

For the reasons set forth above, we affirm Ellis' convictions and sentences.

*AFFIRMED*

---

[6]Ellis also challenges the imposition of a six-year term of supervised release on Count Three. However, even assuming that Ellis could somehow be harmed by an alleged error relating to supervised release (which is unlikely given his life sentence on Count One), Ellis' substantial rights were not affected because he received ten-year and eight-year terms of supervised release on Counts One and Two.

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court did not plainly err in denying Ellis' motions to suppress or by imposing a thirty-year sentence on Count Three. However, I believe that the district court's failure to satisfy the pre-sentencing requirements clearly imposed by Congress upon the federal courts in Section 851(b) constitutes plain and prejudicial error. Accordingly, I must dissent from Part III of the majority's opinion.

The majority concedes that the district court committed plain error in its failure to perform the statutory colloquy required by section 851(b). As the majority observes, the district court failed either to clearly inquire whether Ellis affirmed or denied the prior convictions or to warn Ellis regarding the consequence of failing to object at the appropriate time. Proceeding to analyze this deficiency under the plain error standard of Fed. R. Crim. Proc. 52(b), the majority then concludes that the district court's "error did not affect Ellis' substantial rights." In reaching this result, the majority notes Ellis' failure to object to the prior convictions during either his partial colloquy or pursuant to section 851(c). According to the majority, it is clear that even if the district court had properly apprised Ellis of his right to object, Ellis would not have challenged his prior convictions. Notwithstanding the evidence marshaled by the majority to bolster its conclusion, I simply cannot agree that Ellis necessarily would have forfeited his objection if the district court had properly discharged its statutory duty.

First, although I find it perverse and ironic that Ellis' forfeiture should be analyzed under the exacting plain error standard, I concede that we are bound by its strictures. As the Ninth Circuit aptly noted in *United States v. Severino*, "It's a bit strange to require that a defendant object to the district court's failure to give him an admonition. After all, if the defendant knows to object, he doesn't need the admonition in the first place; it's the defendant who fails to object that needs the admonition most." 316 F.3d 939, 948, n.7 (9th Cir. 2003). However, as the *Severino* court also noted, we appear to be foreclosed from treating Ellis' forfeiture differently by the Supreme Court's decision in *United States v. Vonn*, 535 U.S. 55 (2002) (analyzing under plain error the defendant's failure to object to the district

court's failure to comply with Fed. R. Crim. Proc. 11(c)(3) regarding waiver of the right to counsel at trial). If a defendant must establish plain error where the district court has failed to ensure proper waiver of a right as fundamental as the right to counsel at trial, we cannot insist that a defendant have greater protections to challenge an error under section 851(b).

Before applying the prejudice component of the plain error analysis, we should also note this Court's reasoning in *United States v. Campbell*, 980 F.2d 245 (4th Cir. 1992). In *Campbell*, we allowed sentencing upon substantial compliance with the terms of section 851(b) where we were satisfied that "the substantive protections underlying [section 851(b)] were provided . . . [and where] [d]efendant *appreciated* his right to challenge the state conviction." *Id.* at 252 (emphasis added). In *Campbell*, because the defendant challenged his prior convictions in a presentence motion, his objections were properly raised before the Court. Nonetheless, our emphasis upon the defendant's appreciation of his statutory right cannot be overlooked. It is not clear to me that Ellis *appreciated* his right to object and the consequences of silence. Hence, I do not think that the majority's conclusion properly addresses the fundamental concern underlying our substantial compliance approach in *Campbell*.

If Ellis had appreciated his rights, which would have been the case if the district court had fulfilled its statutory duty, I believe that he probably would have objected to his prior convictions. Given that Ellis was denied his rights by the district court, we owe him at least the benefit of the doubt with respect to whether he would have objected if he had appreciated his rights. Because I believe that Ellis probably would have acted differently had he been aware of the risks of forfeiture, I conclude that the district court's error affected Ellis' substantial rights.

Finally, I do not believe that Ellis' failure to object pursuant to section 851(c) should vitiate the district court's underlying error. Admittedly, as the majority notes, some of our sister circuits have grounded findings of harmless error in the section 851(b) context upon the defendant's failure to object in satisfaction of section 851(c). *See, e.g.*, *United States v. Gaviria*, 116 F.3d 1498, 1525 (D.C. Cir. 1997) (treating failure to warn of waiver as harmless where defendant failed

to offer sufficient factual basis to challenge his priors pursuant to section 851(c)); *United States v. Williams*, 298 F.3d 688, 693 (7th Cir. 2002). I find, however, that this approach unnecessarily penalizes the defendant for the sentencing court's failure to follow Congress' directions. Indeed, invoking this answer to resolve the issue of prejudice merely begs the question of whether a defendant who appreciates his rights would have objected appropriately. We cannot confidently say whether Ellis, had he objected at the appropriate time, would have complied with the provisions of section 851(c). We should reserve consideration of compliance with this section until after Ellis is afforded an appropriate colloquy.

Because I believe that Ellis was prejudiced because he did not appreciate his rights, I dissent from the majority's affirmance of the sentence and would instead remand to the district court with directions to conduct a proper colloquy pursuant to section 851(b).