UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                    No. 02-4618

JAMAL MITCHELL, a/k/a Boo,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-02-25)

Argued: April 4, 2003

Decided: July 31, 2003

Before NIEMEYER and SHEDD, Circuit Judges, and
Terry L. WOOTEN, United States District Judge for the
District of South Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Michael Stefan Nachmanoff, Assistant Federal Public
Defender, Alexandria, Virginia, for Appellant. Richard Daniel Cooke,
Special Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON
BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Frances H.
Pratt, Research and Writing Attorney, Alexandria, Virginia, for

Appellant. Paul J. McNulty, United States Attorney, Gene Rossi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

A federal jury in the Eastern District of Virginia convicted Jamal Mitchell of conspiracy to distribute cocaine and cocaine base, commonly known as crack, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and of conspiracy to commit money laundering in violation of 18 U.S.C. § 1957. After the jury's finding of guilt, the district court entered an order of forfeiture. Mitchell appeals his conviction, sentence, and the order of forfeiture. He argues: (1) that his drug conspiracy conviction should be vacated because of improper venue; (2) that the order of forfeiture should be vacated because it was never incorporated into the judgment of conviction or sentence; (3) that his sentence on the drug charge should be vacated because the district court did not warn him of the effect of the government's filing of an information with respect to a prior conviction and of his right to challenge that conviction; and (4) that the sentencing guidelines were improperly applied. Because we find that Mitchell's arguments lack merit, we affirm his conviction and reject the challenges to his sentence and order of forfeiture.

### I.

### A.

This matter comes before the Court as a result of a drug and money laundering conspiracy that allegedly operated for more than eleven years. From 1990 until his arrest in October of 2001, Mitchell con-

2

spired with others to sell cocaine and crack and to launder the proceeds. At trial, the government offered the testimony of two co-conspirators, Rodney Alston and Vernon Williams, also named in the indictment against Mitchell. Alston testified that he began distributing drugs in the Durham, North Carolina area in the early 1990s. Beginning in 1991, he would drive from North Carolina to Washington, D.C., meet with Mitchell to purchase drugs, and immediately drive back through Virginia to North Carolina. At first, Alston purchased only crack from Mitchell. Later, he shifted from purchasing crack to purchasing large amounts of powder cocaine from Mitchell. In addition to purchasing drugs, Alston also purchased cars for Mitchell.

Like Alston, Vernon Williams began purchasing drugs from Mitchell in the early 1990s. In a typical deal, Williams would telephone Mitchell, who would deliver the drugs to Williams' apartment in Washington, D.C., and then Williams would sell the drugs. Williams testified that he saw Mitchell with a gun during an incident in 1994. Williams testified he observed Mitchell exchange gunfire with a masked person shooting at him and others while they were driving in Washington, D.C.

The government also presented testimony by Alston's two nephews, Maurice Stanley and Micah Jermaine. They testified that they traveled to Washington, D.C. with their uncle Alston twelve or thirteen times to purchase drugs from Mitchell. After receiving the drugs, they would immediately drive back through Virginia to North Carolina and help Alston sell the drugs. Additionally, the government offered evidence presented by two female friends of Mitchell who testified they purchased cellular telephones in their names for Mitchell's use.

B.

On January 24, 2002, a federal grand jury in the Eastern District of Virginia returned a two-count indictment against Mitchell. Count one charged Mitchell with conspiracy to distribute 5 kilograms or more of cocaine, conspiracy to distribute 50 grams or more of crack, and conspiracy to distribute cocaine and crack within 1,000 feet of a school. Count two charged Mitchell with a money laundering conspiracy. In addition, the indictment included a forfeiture provision. Ten

3

days before trial, the government filed a bill of particulars on the forfeiture charge. The government also filed a notice of intent to use Mitchell's prior drug conviction to enhance his sentence.

Prior to trial, Mitchell filed a motion to dismiss count one for improper venue, or in the alternative, to transfer venue, on the grounds that the overt acts alleged in the indictment were insufficient to establish venue in the Eastern District of Virginia. After a hearing, the district court denied the motion. Subsequently, the defendant filed his own *pro se* motion to transfer the case to the District of Columbia, but the district court declined to reconsider its prior decision. Subsequently, the case was tried and the jury found Mitchell guilty on the cocaine conspiracy and money laundering counts. However, on a special verdict form, the jury found Mitchell not guilty on the charges of conspiracy to distribute crack and conspiracy to distribute cocaine and crack within 1,000 feet of a school. After the jury returned the verdict, the district court entered an order of forfeiture.

A sentencing hearing was held on July 24, 2002. On August 29, 2002, the district court issued a sentencing memorandum explaining the court's determination of the applicable sentencing guidelines. The district court imposed a sentence of 360 months imprisonment and 10 years supervised release for count one, the drug conspiracy count; and 120 months imprisonment and 3 years supervised release for count two, the money laundering count. The sentences were ordered to run concurrently.

Mitchell filed a timely notice of appeal.

## II.

Mitchell first argues that venue in the Eastern District of Virginia was improper on the drug trafficking charge. This Court reviews *de novo* questions of law governing venue. *United States v. Stewart*, 256 F.3d 231, 238 (4th Cir. 2001).

The Constitution provides, in relevant part, that"[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. CONST. art. III, § 2, cl. 3. The Sixth Amend-

4

ment reinforces this command, stating that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI. Federal Rule of Criminal Procedure 18 further provides that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." F ED.R.CRIM.P. 18. Congress has also established that with continuing offenses, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

When multiple counts are alleged in an indictment, venue must be proper on each count. *See United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). Venue on a count is proper only in a district in which an essential conduct element of the offense took place. *Id*. at 309. In a conspiracy case, the Supreme Court has long held that venue is proper in any district in which a conspirator performs an overt act in furtherance of the conspiracy or performs acts that effectuate the object of the conspiracy, even though there is no evidence that the defendant had ever entered that district or that the conspiracy was formed there. *Hyde v. United States*, 225 U.S. 347, 356-67 (1912). The burden is on the government to prove venue by a preponderance of the evidence. *United States v. Al Talib*, 55 F.3d 923, 928 (4th Cir. 1995).

Mitchell maintains that venue on the drug conspiracy charge is not proper in the Eastern District of Virginia. Mitchell argues the only conduct relating to the drug conspiracy in the Eastern District of Virginia is that his co-conspirators drove the drugs through that district on at least three occasions after they were purchased from Mitchell in Washington, D.C. Mitchell concedes that venue was proper in the Eastern District of Virginia on count two, the money laundering count, but argues that the purchasing of a home and the titling of cars in that district should only be used to establish venue for the money laundering count, not the drug conspiracy count. We disagree with this position for the reasons set forth and find venue is proper in the Eastern District of Virginia on the drug conspiracy count.

5

In the indictment against Mitchell on the drug conspiracy count, the government referenced the following overt acts carried out by Mitchell and/or his conspirators that it argues support venue in the Eastern District of Virginia: (1) Mitchell met Alston in Washington, D.C. and thereafter engaged in repeated drug transactions that led to the transportation of cocaine through the Eastern District of Virginia; (2) Mitchell purchased a residence in the Eastern District of Virginia with the proceeds of his illegal drug-trafficking activities; and (3) Mitchell purchased automobiles with drug proceeds and titled them in the Eastern District of Virginia.

This Court has repeatedly held that the overt act of one conspirator in a district suffices to establish venue for all other co-conspirators in that district. *See Al-Talib*, 55 F.3d at 928. The overt act or acts necessary to support venue in a conspiracy case do not have to be substantial. For example, in *Al-Talib*, this Court found that venue was proper in the district of Virginia when the government showed that while on a trip to arrange a drug deal, a conspirator drove through Virginia, received a speeding ticket in Virginia, and landed in Virginia on a return flight. The conspirator also had his car registered in Virginia.

The *Al-Talib* court recognized that far more insubstantial acts such as telephone calls to the district have served to establish venue in conspiracy cases. *See also United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987) (finding venue proper when cocaine flown over district); *United States v. Shearer*, 794 F.2d 1545, 1550-1551 (11th Cir. 1986) (finding venue proper based on automobile trip through and airplane flight over district); *United States v. Lewis*, 676 F.2d 508, 511 (11th Cir. 1982) (finding venue proper based on telephone calls to district in furtherance of conspiracy); *United States v. Prueitt*, 540 F.2d 995, 1006 (9th Cir. 1976) (finding venue proper whenre marijuana flown over district); *United States v. Williams*, 536 F.2d 810, 812 (9th Cir. 1976) (finding venue proper based on conspirators' flight over district en route to obtain marijuana).[1]

---

[1] Mitchell points out in his brief that all of these cases were decided prior to the Supreme Court's decision in *Rodriguez-Moreno*. Mitchell also argues that these cases are distinguishable because they involve charges of importation of drugs and transportation is a critical element under that statute. However, all of these cases are not exclusively drug importation cases. Regardless, the Court cites to them as reference for the general principles traditionally applied in venue actions.

6

Mitchell argues that two recent Supreme Court cases, *United States v. Cabrales*[2] and *United States v. Rodriguez-Moreno*,[3] which differentiate between essential and non-essential elements of offenses, now call into question the traditional standards permitting conspiracy prosecutions in multiple districts. We disagree.

In *Cabrales*, the defendant was indicted in Missouri for money laundering that occurred entirely in Florida. The currency that was purportedly laundered was generated from a drug conspiracy in Missouri. Importantly, the defendant was not charged with participation in the Missouri drug conspiracy, nor was it alleged that she transported the funds from Missouri to Florida. The government argued in *Cabrales* that venue in Missouri was proper because it was where the laundered funds were generated. The Eighth Circuit Court of Appeals rejected this argument and the Supreme Court affirmed. In explaining why venue was not proper in Missouri on the money laundering count, the Supreme Court emphasized that money laundering "might rank as a `continuing offense,' triable in more than one place, if the launderer acquired the funds in one district and transported them to another." *Cabrales*, 524 U.S. at 8. But in *Cabrales*, the defendant did not acquire the funds in Missouri nor did she transfer the funds from Missouri to Florida. She only laundered the money through a series of transactions that took place entirely in Florida. The Supreme Court determined that venue was not proper in Missouri because the defendant's money laundering activities occurred after the fact of a drug conspiracy offense began and completed by others.

In *Rodriguez-Moreno*, the defendant was charged with a gun offense under 18 U.S.C. § 924(c)(1), which makes it a crime to "use or carry a firearm during and in relation to a crime of violence." The defendant kidnapped an individual in Texas. He was then transported to New Jersey and finally to Maryland. While in Maryland, the defendant obtained a gun and used it to threaten his captive. The defendant was ultimately tried and convicted in New Jersey on the § 924(c) charge. The Supreme Court held that venue in New Jersey was proper because the commission of a crime of violence, the kidnapping

---

[2] *United States v. Cabrales*, 524 U.S. 1 (1998).

[3] *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999).

7

charge, was an essential element of the § 924(c) gun charge. As well, the gun was used "during and in relation to" the kidnapping, and because the kidnapping charge was a continuing offense, venue was held to be proper in any district in which the kidnapping "was begun, continued, or completed." *Rodriguez-Moreno*, 526 U.S. at 282.

The *Rodriguez-Moreno* court distinguished *Cabrales* by characterizing the underlying drug conspiracy that generated the criminally-derived proceeds as a "circumstance element" of money laundering, which was insufficient to establish venue. In *Rodriguez-Moreno*, however, the underlying crime of violence (kidnapping) was an "essential element" of the § 924(c) firearm offense, providing an adequate basis for venue. Significantly, both cases emphasize that the law regarding venue in conspiracies remains the same: venue is proper for a conspiracy wherever the agreement was made or where any conspirator carried out overt acts. *Rodriguez-Moreno*, 526 U.S. at 281-282; *Cabrales*, 524 U.S. 8-10.

This Court has previously referenced the Supreme Court's decisions in *Cabrales* and *Rodriguez-Moreno* in support of the proposition that "venue is limited to the place where the essential conduct elements occur, without regard to the place where other essential elements of the crime occur." *United States v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000). As footnoted in *Bowens*:

> At first blush, it might seem that this rule imposes a significant limitation on permissible venues. It does not. In determining venue for a particular offense, not only is the conduct of the defendant himself considered, but the conduct of anyone with whom he shares liability as a principal is as well. Thus, in a conspiracy charge, venue is proper for all defendants wherever the agreement was made or wherever any overt act in furtherance of the conspiracy transpires.

*Id*. at 311 n.4.

In this case, we conclude that acts of Mitchell and his co-conspirators in the Eastern District of Virginia were essential in furthering the drug conspiracy and were sufficient to establish venue on

8

the drug conspiracy count. Mitchell engaged in a drug conspiracy that involved the sale of drugs in Washington, D.C., the transportation of those drugs through Virginia, and the distribution of the drugs in North Carolina. The transportation of the drugs through Virginia was an act in furtherance of the conspiracy and was essential to the distribution of those drugs in North Carolina. The facts of this case are distinguishable from *Cabrales* because Mitchell was charged with a drug conspiracy count that was ongoing and intertwined with the money laundering count. The drug conspiracy continued for approximately eleven years and stopped only upon Mitchell's arrest. In *Cabrales*, the defendant was not charged in connection with the drug conspiracy. The only allegation was that the defendant laundered money that resulted from a completed drug conspiracy.

In conclusion, a conspirator's use of the Virginia highways to transport drugs, purchase of a Virginia residence with drug proceeds, and purchase of automobiles with drug proceeds that were subsequently titled in Virginia establish a sufficient nexus to Virginia to allow for indictment and prosecution there on conspiracy drug charges. Accordingly, we find that the district court did not err in denying Mitchell's motion to dismiss count one of the indictment for improper venue.

### III.

Mitchell next argues that the order of forfeiture entered against him should be vacated because it was never incorporated into the judgment of conviction and sentence. Because Mitchell did not raise this claim in the district court, we review for plain error. FED.R.CRIM.P. 52(b). In order to establish our authority to notice an error not preserved by a timely appeal, Mitchell must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). Even if Mitchell were to satisfy these requirements, correction of the error remains within our discretion, which the court "should not exercise . . . unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*.

Under the rule governing forfeiture in criminal cases, the court shall not enter a judgment of forfeiture unless the defendant first

9

receives notice that the government will seek forfeiture of property as part of any sentence. FED.R.CRIM .P. 32.2(a). Second, the court must determine, as soon as is practicable following a finding of guilt on the substantive charges, what property is subject to forfeiture, and enter a preliminary order of forfeiture. FED.R.CRIM.P. 32.2(b)(1)-(2). Third, the rule provides that "[a]t sentencing — or at any time before sentencing if the defendant consents — the order of forfeiture becomes final as to the defendant and must be made a part of the sentence and be included in the judgment." FED.R.CRIM.P. 32.2(b)(3). Similarly, the applicable forfeiture statute in this case, 21 U.S.C. § 853(a), provides that the court, "in imposing sentence on [a person subject to forfeiture], shall order . . . that the person forfeit to the United States all property described in this subsection."

Mitchell received notice of the forfeiture both in the indictment and in a subsequent bill of particulars. After the jury's verdict establishing guilt, the court identified the property subject to forfeiture and entered a preliminary order of forfeiture reflecting that determination. At Mitchell's sentencing, however, the trial judge did not make the forfeiture part of the sentence. Further, a forfeiture reference was not included in the judgment of conviction entered later that day. Mitchell argues that the district court failed to comply with the forfeiture requirements and, therefore, the more than $2,000,000 of money and property should be returned. We disagree.

Assuming that Mitchell was able to show that the failure to incorporate the forfeiture order into the judgment of conviction and sentence was plain error that affected his substantial rights, the Supreme Court precedent of *Olano* directs that the court of appeals should not exercise discretion to correct the error unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *See Olano*, 507 U.S. at 732. In this case, the government provided Mitchell with proper notice of the forfeiture by including a forfeiture count in the indictment and by providing a bill of particulars addressing the forfeiture. Further, the district court complied with Rule 32.2(b)(1)-(2) by determining what property was subject to forfeiture and by entering a preliminary order of forfeiture shortly after the jury's determination of guilt. At sentencing, this preliminary order of forfeiture became a final order pursuant to Rule 32.2(b)(3).

10

Mitchell was clearly on notice of the pending forfeiture through the indictment, the bill of particulars, and the preliminary order of forfeiture. However, at no point did Mitchell or his counsel raise an objection or respond to the pending forfeiture. Further, Mitchell did not raise the issue of forfeiture during his sentencing hearing. While the record indicates that the forfeiture was not made part of the sentence and was not included in the judgment, Mitchell was on notice and had ample opportunity to challenge the forfeiture. Mitchell has not put forth any evidence that would indicate that the more than $2,000,000 in forfeited money and property was anything other than proceeds derived from illegal drug activity. Therefore, under the specific facts of this case, the failure to incorporate the forfeiture order into the judgment of conviction and sentence was simply a ministerial error that did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. As well, any error by the district judge was harmless. Therefore, Mitchell is not entitled to relief on this claim.[4]

## IV.

Mitchell next challenges his federal sentence claiming that the district court failed to warn him of the effect of the government's filing of an information with respect to a prior conviction and his right to challenge it as required by 21 U.S.C. § 851(b). Because Mitchell did not raise this claim in the district court, our review is for plain error. *United States v. Ellis*, 326 F.3d 593 (4th Cir. 2003).

Section 851(b) provides that if the government files an information seeking enhanced penalties for a drug offense on the basis of prior convictions, the court shall, "after conviction but before pronouncement of sentence, inquire of the [defendant] whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." This procedure provides the defendant with a "full and fair opportunity to establish that he is not the previ-

---

[4] We find that the decision in *United States v. Pease*, 2003 WL 21196503 (11th Cir. 2003), is reviewing an ancillary civil proceeding and the facts of that case are distinguishable from those facts raised in Mitchell's criminal appeal.

11

ously convicted individual or that the conviction is an inappropriate basis for enhancement under section 841." *United States v. Campbell*, 980 F.2d 245, 252 (4th Cir. 1992). The record indicates that the district court did not specifically question Mitchell or advise him as required under § 851(b). However, we conclude that the error did not affect Mitchell's substantial rights.

As required by 21 U.S.C. § 851(b), the government filed an information prior to trial notifying the defendant that the government intended to increase his statutory penalty under 21 U.S.C. § 841(b) by using a 1993 conviction for attempted possession with intent to distribute cocaine. Section 851(c)(1) provides that if the defendant intends to contest the government's use of a prior conviction to enhance the sentence, the defendant must file a written response to the government's information and the court is required to have a hearing to resolve the dispute. Mitchell, however, filed no written response and did not contest the existence or validity of the prior convictions pursuant to § 851(c). *See United States v. Williams*, 298 F.3d 688, 693 (7th Cir. 2002) (holding failure to comply with § 851(b) was harmless error, in part because defendant did not comply with § 851(c) procedures for challenging prior convictions).

We also note that the presentence report prepared in Mitchell's case listed the 1993 conviction and indicated that it would increase the minimum mandatory custodial sentence, supervised release period, and minimum fine amount. Neither Mitchell nor his attorney raised any question about the conviction or objected to the contents of the presentence report prior to sentencing. *See United States v. Hill*, 142 F.3d 305, 313 (6th Cir. 1998) (holding that failure to comply with § 851(b) was harmless, in part because defendant did not object to prior convictions listed in presentence report). In addition, during the sentencing hearing, the district court asked Mitchell if he had read the presentence report, reviewed it with counsel, and was satisfied with the accuracy. Mitchell paused prior to answering. In clarifying its question, the district court said, "in other words, your prior record, which is nothing, and family and those kinds of things." Mitchell then responded in the affirmative to the court's question. We find the court's comment does not change the analysis of this issue. As noted, Mitchell did respond that he was satisfied with the accuracy of the presentence report. Therefore, we conclude that had the district court

12

specifically complied with the requirements of § 851(b), there is no basis to find that Mitchell or his counsel would have raised any objection to the potential sentence Mitchell faced based on the § 851 enhancement.[5]

For the reasons stated above, we conclude that any error regarding failure to comply with § 851(b) did not affect Mitchell's substantial rights and was, therefore, harmless.

V.

Finally, Mitchell argues that the district court improperly applied the United States Sentencing Guidelines in determining his sentence. This Court reviews for clear error the factual determination of a district court in applying the Sentencing Guidelines and gives due deference to a district court's application of a guideline to particular facts. 18 U.S.C. § 3742(e); *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997) (weapon enhancement under U.S.S.G. § 2D1.1); *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002) (role in offense under U.S.S.G. § 3B1.1).

A.

Regarding his sentence, Mitchell first argues that the district court erred in applying the two-level weapon enhancement. Under the sentencing guidelines, the offense level for a defendant who committed a drug trafficking offense must be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Application note 3 of this guideline adds: "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly

---

[5] The statute also provides that a defendant is not permitted to challenge a conviction that pre-dates the filing of the government's information by more than five years. *See* 21 U.S.C. § 851(e). The government filed the information in this case on April 5, 2002. The conviction noted in the information occurred on February 3, 1993, more than five years earlier.

13

improbable that the weapon was connected with the offense."
U.S.S.G. § 2D1.1(b)(1) cmt. n.3.

Mitchell argues that the two-level gun enhancement was inappropriate because the shooting incident in 1994 was part of a different drug conspiracy and the testimony by his co-conspirators that they had seen Mitchell with a gun was unreliable. The district court rejected these arguments in its sentencing memorandum dated August 29, 2002. In support of the two-level enhancement, the district court noted that conspirator Williams and Officer Shedwick (the police officer reporting to the scene), both testified that the defendant possessed and used a firearm during a 1994 incident in which Mitchell held $9,000 that he received from Williams in a drug transaction. Further, the district court referred to testimony by other co-conspirators that they had seen Mitchell in possession of a firearm on other occasions. We find that this testimony and the additional evidence that the drug conspiracy lasted from the early 1990s until 2001 is more than sufficient to show that it was not clearly improbable that the weapon was connected with the drug conspiracy offense. Therefore, we conclude that the district court did not err in finding that the weapon enhancement should apply to increase Mitchell's offense level.

B.

Mitchell next argues that the district court erred in increasing his sentencing offense four-levels for his role as an organizer or leader in the drug conspiracy. Under the sentencing guidelines, a defendant's offense level should be increased by four levels"[i]f the defendant is an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The Sentencing Commission has indicated that a court should consider seven factors in determining a defendant's "leadership and organizational role." U.S.S.G. § 3B1.1, cmt. n.4. These include: "[1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 cmt. n.4; *see also Sayles*, 296 F.3d at 224.

14

In its sentencing memorandum, the district court identified at least five individuals that Mitchell directed in laundering his illegal drug proceeds, titling cars, opening telephone accounts, and obtaining safe deposit boxes. Further, the district court found that all seven factors referenced in U.S.S.G. § 3B1.1 cmt. n.4 and *Sayles* were satisfied. There is sufficient evidence in the record to support each of these factors. In light of the evidence presented regarding the length of the conspiracy, the drug distribution in several states, the purchasing of cars and homes in different states, and the large amount of currency in Mitchell's possession at the time of his arrest, we cannot conclude that the district court erred in finding that Mitchell's offense level calculation on the drug conspiracy offense should be increased by four-levels.

VI.

Having reviewed the record and the parties' briefs, and having had the benefit of oral argument, we find no reversible error. Accordingly, we affirm the defendant's conviction and sentence, and uphold the forfeiture order.

*AFFIRMED*

15