UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-4244

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

GERSON ARTURO APLICANO-OYUELA, a/k/a Hershen Arturo Oulala,
a/k/a Jose Roberto Ordonez, a/k/a Franklin Maradiaga Ortiz,
a/k/a Herzan Aplicano, a/k/a Jefferson Alexander Ordonez,

Defendant – Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Peter J. Messitte, Senior District
Judge. (8:13-cr-00444-PJM-1)

Argued: March 26, 2015          Decided: July 7, 2015

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Niemeyer and Judge Harris joined.

**ARGUED:** Julie L.B. Johnson, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Greenbelt, Maryland, for Appellant. Nicholas Jacob
Patterson, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt,
Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public
Defender, Baltimore, Maryland, Matthew McNicoll, Law Clerk,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for
Appellant. Rod J. Rosenstein, United States Attorney,
Baltimore, Maryland, Kelly O'Connell Hayes, Assistant United

States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

KING, Circuit Judge:

Gerson Arturo Aplicano-Oyuela ("Aplicano"), a native and citizen of Honduras, pleaded guilty in the District of Maryland to an illegal reentry offense that occurred after his removal from this country following a felony conviction. See 8 U.S.C. § 1326(a), (b)(1). On March 13, 2014, the district court sentenced Aplicano to sixteen months in prison and three years of supervised release. On appeal, Aplicano challenges solely his term of supervised release, contending that it was procedurally and substantively unreasonable, and that the court failed to properly advise him with respect to supervised release before accepting his guilty plea. As explained below, we affirm.

I.

A.

In 2002, at the age of nineteen, Aplicano illegally entered the United States from Honduras. In August 2006, Aplicano pleaded guilty to second-degree assault in Maryland using the name "Hershen Arturo Oulala." Two years later, he pleaded guilty in Maryland to driving without a license, this time using the alias "Gerson E. Aplicano." In 2011, Aplicano was convicted of criminal mischief in Ohio under the name "Jefferson Ordonez." That November, Aplicano was released from state confinement into

3

the custody of the Department of Homeland Security's Immigration and Customs Enforcement ("ICE"). In late 2011, Aplicano was removed to Honduras.

Almost immediately after his removal, Aplicano unlawfully reentered the United States. He was apprehended by border patrol agents in McAllen, Texas, however, and removed to Honduras in January 2012. Sometime between January 2012 and March 2013, Aplicano again entered the United States without authorization. In March and May 2013, he was arrested for separate offenses in Maryland — on both occasions using the alias "Frankin J. Maradiaga-Ortiz." Although those charges were later dismissed, Aplicano's brushes with law enforcement continued. In late May 2013, he was arrested for another second-degree assault in Maryland. Following Aplicano's guilty plea on the assault charge in July of that year — under the fictitious name "Jose Roberto Ordonez" — ICE again took custody of Aplicano and obtained his fingerprints. ICE determined Aplicano's true identity by comparing those fingerprints to fingerprint records in its database.

B.

By its indictment of August 26, 2013, the federal grand jury in Maryland charged Aplicano with illegal reentry by an alien who had previously been removed after a felony conviction, in contravention of 8 U.S.C. § 1326(a) and (b)(1). Aplicano

4

initially pleaded not guilty to the indictment.  On November 22, 2013, however, Aplicano submitted a letter (the "plea letter") through his attorney to the district court, explaining that (1) he "knowingly and voluntarily agreed to plead guilty" to the single charge in the pending indictment "without the benefit of a plea agreement"; and (2) the plea letter would "assist the Court in the Rule 11 colloquy."  J.A. 9.[1]  Aplicano acknowledged that the "maximum sentence" for the illegal reentry offense includes "a period of supervised release of three (3) years." Id. at 10.  According to the plea letter, Aplicano also understood that

> if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked — even on the last day of the term — and [he] could be returned to custody to serve another period of incarceration and a new term of supervised release.

Id.  Aplicano signed and dated the plea letter, acknowledging therein that "I have carefully discussed this letter with my attorney.  I understand it, and I voluntarily agree to it."  Id. at 13.

The district court conducted Aplicano's plea hearing on December 11, 2013.  Consistent with the plea letter, Aplicano

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

pleaded guilty to the illegal reentry charge in the indictment. Accepting Aplicano's guilty plea, the court observed that there was no plea agreement. The court acknowledged receipt of the plea letter, however, and confirmed that Aplicano had reviewed it with an interpreter. It advised Aplicano that, by pleading guilty, he would be subject to the "maximum possible penalty" for his offense, including "supervised release for a period of three years." J.A. 23. Aplicano indicated that he understood, and his attorney agreed that the court could impose a sentence "within its discretion." Id. at 26.

On February 4, 2014, the probation officer presented Aplicano's presentence report (the "PSR") to the district court. According to the PSR, Aplicano's base offense level for the illegal reentry offense was level 8, pursuant to the Sentencing Guidelines, but it was increased by four levels as a result of his 2006 felony assault conviction in Maryland. See U.S.S.G. § 2L1.2(b)(1)(D) (2012). Aplicano's offense level was then reduced by two levels for acceptance of responsibility, resulting in a total offense level of 10. The PSR identified the applicable Guidelines range as ten to sixteen months, and recommended a within-Guidelines sentence of thirteen months. The PSR also indicated that the court was entitled to impose a term of supervised release, in accordance with the following provisions:

6

Statutory Provisions:   If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

Guidelines Provisions:  Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to U.S.S.G. § 5D1.1(a).  If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to U.S.S.G. § 5D1.1(b).  The guideline range for a term of supervised release is at least one year but not more than three years for a defendant convicted of a Class C felony, pursuant to U.S.S.G. § 5D1.2(a)(2).   However, pursuant to U.S.S.G. § 5D1.1(c), <u>the Court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment</u>.

J.A. 79 (emphasis added).   Invoking Aplicano's two previous assault convictions, the PSR recommended that the court impose a two-year term of supervised release, in consideration of the "safety of the community."  <u>Id.</u> at 85.

On February 28, 2014, Aplicano submitted a second letter to the district court (the "sentencing letter"), acknowledging that he did not dispute the PSR's calculation of his total offense level as 10.   Aplicano urged the court, however, to vary downward from the Guidelines range of ten to sixteen months, and specifically sought an eight-month sentence in consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).   The sentencing letter did not address the PSR's recommendation of

7

supervised release, and Aplicano never sought to withdraw his guilty plea.

## C.

On March 13, 2014, the district court conducted Aplicano's sentencing hearing. Neither the prosecution nor Aplicano objected to the PSR, and the court adopted "the factual findings and advisory guideline application in the [PSR] without change." J.A. 36-37. The government then argued for a sentence of sixteen months in prison, reminding the court that Aplicano had illegally entered the United States three times, "[t]wice after having been convicted of a crime and thereafter deported." Id. at 37. Aplicano urged the court to consider his "personal history and characteristics," and to impose "a sentence of eight months or in the range of eight to ten months." Id. at 41. Aplicano maintained that an eight- to ten-month term of imprisonment would permit him to apply for withholding of removal based on his family's status in Honduras. Specifically, he explained that his family had been targeted by a Honduran gang that had "executed his aunt, attempted to kill his cousin," and forced other family members into hiding. Id. Aplicano suggested that a gunshot wound to his leg in 2011 — occurring

shortly after his first removal to Honduras — was the result of a Honduran gang attack.[2]

In fashioning the sentence, the district court focused on Aplicano's multiple illegal entries into the United States and predicted that he would unlawfully return to this country post-removal. Observing Aplicano's propensity to commit crimes following his illegal entries, the court further questioned why Aplicano's criminal history should "somehow be minimized in order to accommodate his desire to stay" in the United States. See J.A. 49. The court provided the following observations in that regard:

- "We forget the crimes, when we talk about it, we forget the fact that he ignores the law and comes back." Id. at 46.

- "I see he's used aliases four times when he's been in court. . . . How is this man in any way law abiding? How can I believe for a moment anything he says about his future intention?" Id.

- "His real problem is he comes to this country illegally and commits crimes. That's what we're talking about. . . . He's broken our law again and again." Id. at 46-47.

_____

[2] Aplicano represented to the sentencing court that a nonprofit organization had agreed to help him apply for immigration relief. He suggested that, if the court imposed a sentence greater than ten months, the Bureau of Prisons would relocate him to another detention facility and thereby cause him to lose the assistance of the nonprofit organization.

- "[T]his is a man who is really not very law-abiding when he gets here." Id. at 48.

- "[Y]ou violated the law twice just coming into the country unlawfully. While you were here, you committed crimes, assaults, hurting other people." Id. at 51.

- "[I]t's bad to come in unlawfully. It's bad to commit crimes while you're here. The courts are not going to stand for it." Id. at 53.

- "I have no reason to believe you won't do this again. You [have] done it twice already. There's just no reason to believe you. . . . You'll find a reason to get back here again." Id.

Although the district court evaluated the § 3553(a) factors to determine whether Aplicano "merits some sort of special solicitude," see J.A. 51, it doubted the veracity of Aplicano's account of his life in Honduras, observing that other defendants facing sentences under § 1326 have offered "the same story" as Aplicano, see id. at 52. In light of Aplicano's criminal history, the court resolved to "opt in favor of protecting the people that are [in the United States] rather than" rule in favor of protecting Aplicano. Id. The court then advised Aplicano that

> I'm going to fashion a sentence so that if you [illegally reenter the United States], it will be easy to incarcerate you for a very long time. . . . You deserve punishment. That's not the main thing. You certainly need to be deterred, because [it] looks to me like you're going to try this again. No reason not to. And if you do, it should be easy for the government to come back to court and easy to get a longer sentence as well.

10

Id. at 53–54.

By its criminal judgment, the district court sentenced Aplicano to sixteen months in prison and three years of supervised release.[3] Acknowledging that the probation officer had "some concerns with" imposing supervised release, the court stated that supervised release was appropriate "for the following reason:  That I think [Aplicano] may well try to get back in the country again." J.A. 54. The court instructed the probation officer that, if Aplicano illegally reentered the United States, "I want you to obviously file a petition to revoke [his supervised release] and we'll get him in jail much faster than if we went through a separate prosecution." Id. Then, speaking directly to Aplicano, the court warned, "[U]nderstand, sir, that you will [then] face substantially longer jail time." Id. Notably, Aplicano did not object to the term of supervised release when it was imposed by the court.

Now, however, Aplicano challenges his three-year term of supervised release on the grounds that it is procedurally and

---

[3] According to the criminal judgment, Aplicano, as a condition of supervised release, must "be surrendered to a duly authorized immigration official for deportation in accordance with established procedures provided by the Immigration and Naturalization Act. If ordered deported, [Aplicano] shall not reenter the United States without express permission of the Attorney General, or his/her designated representative." J.A. 67.

substantively unreasonable, and that his guilty plea was fatally flawed. He timely noticed this appeal, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

When a criminal defendant presents a sentencing issue that was not properly preserved in the district court, we review the issue for plain error only. See United States v. Hargrove, 625 F.3d 170, 184 (4th Cir. 2010) (applying plain error review to substantive challenges); United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010) (applying plain error review to procedural challenges). Similarly, when a defendant contests the validity of a guilty plea that he did not seek to withdraw, we also review that challenge solely for plain error. See United States v. Martinez, 277 F.3d 517, 524, 527 (4th Cir. 2002). To satisfy plain error review, the defendant must establish that: (1) there is a sentencing error; (2) the error is plain; and (3) the error affects his substantial rights. See United States v. Olano, 507 U.S. 725, 731-32 (1993). If the three-part plain error test is satisfied, we must decide whether to cure the error, "and should not do so unless the error 'seriously affects the fairness, integrity or public reputation of judicial

12

proceedings.'" Hargrove, 625 F.3d at 184 (quoting Olano, 507 U.S. at 736).

### III.

In this appeal, Aplicano first contends that his three-year term of supervised release is procedurally unreasonable because the district court failed to specify appropriate reasons for its imposition. Second, Aplicano argues that the term of supervised release is substantively unreasonable because the court relied on a mistaken premise — namely, that Aplicano would be imprisoned faster if again caught illegally entering the United States. Finally, Aplicano asserts that his guilty plea was not knowingly and voluntarily entered because the court failed to advise him of the nature and consequences of supervised release.

### A.

Before assessing the merits of Aplicano's contentions, we briefly review the supervised release system, including its impact on aliens facing post-incarceration removal. Supervised release is the successor to parole, which was largely eliminated by the Sentencing Reform Act of 1984. See United States v. Buchanan, 638 F.3d 448, 451 (4th Cir. 2011). Notably, "[s]upervised release is not a punishment in lieu of incarceration"; rather, "it is a unique method of post-confinement supervision that fulfills rehabilitative ends,

13

distinct from those served by incarceration." Id. (internal quotation marks omitted). Supervised release is mandatory if required by statute. See 18 U.S.C. § 3583(a); U.S.S.G. § 5D1.1(a)(1). It is also mandatory if a defendant is sentenced to a term of imprisonment exceeding one year, with the single exception discussed below. See U.S.S.G. § 5D1.1(a)(2), (c). Otherwise, a sentencing court may exercise discretion to impose supervised release. See 18 U.S.C. § 3583(a). In each situation, a court must consider the following § 3553(a) factors before imposing supervised release: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need to deter criminal conduct; (4) the need to protect the community from future crimes; and (5) the pertinent policy statements issued by the Sentencing Commission. See id. § 3583(c).

In 2011, the Sentencing Guidelines were amended to add section 5D1.1(c), which contains the exception to the general supervised release rules. Section 5D1.1(c) provides that, if supervised release is not required by statute and the defendant is an alien facing post-incarceration removal, a sentencing "court ordinarily should not impose a term of supervised release." U.S.S.G. § 5D1.1(c). Rather, if the defendant illegally reenters the United States in contravention of a condition of supervised release, "the need to afford adequate

14

deterrence and protect the public ordinarily is adequately served by a new prosecution." Id. § 5D1.1 cmt. n.5. Nevertheless, the Guidelines do not foreclose the possibility of supervised release being imposed on removable aliens. Indeed, if a sentencing court determines that a removable alien requires "an added measure of deterrence and protection based on the facts and circumstances of a particular case," then "[t]he court should . . . consider imposing a term of supervised release." Id.

B.

We first consider whether the district court's imposition of the three-year term of supervised release was procedurally unreasonable. Aplicano contends that, because supervised release is ordinarily discouraged for removable aliens pursuant to Guidelines section 5D1.1(c), the court erroneously imposed supervised release by "fail[ing] to adequately explain its justification for deviating from this guideline." See Br. of Appellant 11; see also Gall v. United States, 552 U.S. 38, 51 (2007) (recognizing as procedural error the sentencing court's failure to "adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range").

We are without published authority on whether imposition of supervised release on an alien who is likely to be removed is

15

procedurally reasonable.[4] Although we are mindful that such a post-incarceration condition is "ordinarily" discouraged by the Guidelines for a removable alien, the term "ordinarily" in section 5D1.1(c) is "hortatory, not mandatory." See United States v. Dominguez-Alvarado, 695 F.3d. 324, 329 (5th Cir. 2012). Moreover, Application Note 5 to section 5D1.1 provides that a sentencing court "should, however, consider" imposing a term of supervised release in certain situations. Accordingly, the imposition of "supervised release is appropriate and not a departure from the . . . Guidelines if the district court finds that supervised release would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." United States v. Alvarado, 720 F.3d 153,

---

[4] In our nonprecedential unpublished decisions reviewing imposition of supervised release on aliens who are likely to be removed post-incarceration, we have generally affirmed. See United States v. Jeronimo-Rodas, 583 F. App'x 122, 123 (4th Cir. 2014); United States v. Hosein, 581 F. App'x 199, 200 (4th Cir. 2014); United States v. Xutuc-Lopez, 547 F. App'x 302, 302 (4th Cir. 2013); United States v. Deleon-Ramirez, 542 F. App'x 241, 247 (4th Cir. 2013); United States v. Cruz, 538 F. App'x 289, 290 (4th Cir. 2013); United States v. Amezquita-Franco, 523 F. App'x 971, 974 (4th Cir. 2013); United States v. Sanchez-Mendez, 521 F. App'x 142, 144 (4th Cir. 2013); United States v. Hernandez, 519 F. App'x 820, 823 (4th Cir. 2013); United States v. Ramirez, 503 F. App'x 226, 227 (4th Cir. 2013); United States v. Jimenez-Manuel, 494 F. App'x 411, 413 (4th Cir. 2012). But see United States v. Bautista-Villanueva, 546 F. App'x 260, 261 (4th Cir. 2013) (remanding for the sentencing court to "perform an individualized assessment of the propriety of imposing a term of supervised release").

155 (2d Cir. 2013) (internal quotation marks omitted); see also Dominguez-Alvarado, 695 F.3d at 329.

We are satisfied that the district court appropriately determined that imposing a term of supervised release on Aplicano would provide an added measure of deterrence and protection for the community. At sentencing, the court made repeated references to its desire to deter Aplicano from illegally entering the United States for a fourth time and continuing his pattern of committing criminal acts. The court expressed its desire to protect "the people that are here rather than" protect Aplicano. See J.A. 52. The court also explained that punishing Aplicano was "not the main thing," suggesting that Aplicano's "need to be deterred" was a greater concern. See id. at 54. The court then informed Aplicano that it would impose a term of supervised release "for the following reason: That I think you may well try to get back in the country again." Id. In these circumstances, the imposition of supervised release was appropriate under the Guidelines.

In so ruling, we recognize that the district court failed to specifically discuss the Guidelines or "state that supervised release (as opposed to [Aplicano's] sentence generally) was designed to provide an additional measure of deterrence." See Alvarado, 720 F.3d at 159. Nonetheless, as the Second Circuit has determined, where a sentencing court (1) is aware of

17

Guidelines section 5D1.1(c); (2) considers a defendant's specific circumstances and the § 3553(a) factors; and (3) determines that additional deterrence is needed, "[n]othing more [is] required." Id. But see United States v. Solano-Rosales, 781 F.3d 345, 353 (6th Cir. 2015) (explaining that the sentencing court erred "in failing to acknowledge the guidelines recommendation against supervised release embodied in § 5D1.1(c) or discuss its decision to take a different course of action in Defendant's case"). We agree with the Second Circuit's analysis and readily conclude that the three factors it has identified are present here.

As for the first factor, the district court was aware of § 5D1.1(c) because it adopted the PSR "without change," including the "advisory guideline application." See J.A. 37. The PSR explained that supervised release is generally required where a term of imprisonment exceeding one year is imposed, except that supervised release ordinarily should not be ordered for a removable alien. The PSR then recommended a term of supervised release due to Aplicano's particular characteristics — that is, his propensity to commit violent crimes. By way of the PSR, the court was aware of section 5D1.1(c)'s substantive recommendation against the imposition of supervised release on removable aliens. Indeed, the court's comment at sentencing that it knew the probation officer had "some concerns with"

18

imposing supervised release plainly referred to the provision of section 5D1.1(c) that courts "ordinarily" should not order supervised release for a removable alien. See id. at 54.

With respect to the second factor, the district court considered Aplicano's specific circumstances and the other § 3553(a) factors in fashioning his term of supervised release. More specifically, the court acknowledged Aplicano's account of the violence he and his family had suffered in Honduras, but questioned the genuineness of that story. See 18 U.S.C. § 3553(a)(1). Observing Aplicano's history of violent criminal activities while in the United States, see id., the court opted to protect the people of this country from further crimes by Aplicano, see id. § 3553(a)(2)(C). The court also determined that Aplicano's history of illegal entries justified deterring him from further unlawful reentries. See id. § 3553(a)(2)(B).

Aplicano argues that the district court's analysis of the § 3553(a) factors was limited to his term of imprisonment, and thus did not apply to his term of supervised release. He suggests that, because the court's analysis of the § 3553(a) factors preceded its imposition of a term of imprisonment, the consideration of those factors supported only the term of imprisonment. A court's sentencing rationale, however, can support both imprisonment and supervised release. See United States v. Clark, 726 F.3d 496, 501 (3d Cir. 2013) ("[W]e have

19

never required that a district court conduct two § 3553(a) analyses, one related to the term of imprisonment and a second related to the term of supervised release."); United States v. Presto, 498 F.3d 415, 419 (6th Cir. 2007) (concluding that the sentencing court did not commit procedural error when it "engaged in a single consideration of the [§ 3553(a)] sentencing factors, which embraced both the incarceration sentence and the supervised release term").

Finally, the district court determined that Aplicano required additional deterrence, satisfying the third factor. The court's statement to Aplicano immediately after imposing supervised release — "I think you may well try to get back in the country again" — demonstrates that proposition. See id. Accordingly, Aplicano's challenge to the procedural reasonableness of his supervised release term fails to survive the first prong of plain error review, in that there was no error.

### C.

We next assess the substantive reasonableness of Aplicano's term of supervised release. When reviewing a sentence for substantive reasonableness, we must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not

required to, apply a presumption of reasonableness." <u>Gall</u>, 552 U.S. at 51. A "defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the § 3553(a) factors." <u>United States v. Montes-Pineda</u>, 445 F.3d 375, 379 (4th Cir. 2006) (internal quotation marks omitted). If the district court relies on an improper factor, a sentence may be substantively unreasonable. <u>See</u> <u>id.</u> at 378. Because we agree that the imposition of supervised release on Aplicano was consistent with the Guidelines, we presume the substantive reasonableness of Aplicano's sentence.

Aplicano's challenge to his term of supervised release hinges on the district court's remark that, if Aplicano violated the conditions of supervised release, the authorities could "get him in jail much faster than if we went through a separate prosecution." <u>See</u> Br. of Appellant 20 (citing J.A. 54). Aplicano contends that the court's premise was flawed, and, as such, constitutes substantive error. We disagree. <u>Cf.</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 479 (1972) (explaining that a revocation of parole "is often preferred to a new prosecution because of the procedural ease of recommitting the individual on the basis of a lesser showing by the State"). Furthermore, the court's sentencing rationale was not based on an impermissible factor. Indeed, the admonition that Aplicano would be "in jail much faster" is yet another indication of the court's intention

21

to provide deterrence and protection for the community. See 18 U.S.C. § 3553(a)(2)(B), (C). In these circumstances, Aplicano's sentence was substantively reasonable. Because there was no error in this respect, this claim also fails the first prong of plain error review.

## D.

Finally, we assess whether the district court "failed to sufficiently explain the nature and consequences of supervised release," in contravention of Rule 11 of the Federal Rules of Criminal Procedure. See Br. of Appellant 22. Aplicano urges us to either set aside his guilty plea or direct the district court to resentence him without a term of supervised release.

Rule 11(b)(1)(H) provides, in pertinent part, that "[b]efore the court accepts a plea of guilty [it] must inform the defendant of, and determine that the defendant understands, . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release." We have further determined that Rule 11 requires a district court "to personally inform the defendant of, and ensure that he understands, the nature of the charges against him and the consequences of his guilty plea." United States v. Hairston, 522 F.3d 336, 340 (4th Cir. 2008) (internal quotation marks omitted).

22

During the plea hearing, the district court advised Aplicano that "the maximum possible penalty in this case [includes] supervised release for a period of three years." J.A. 23. Aplicano indicated to the court that he understood. Furthermore, Aplicano acknowledged that he had reviewed the plea letter — provided by him to "assist the Court in the Rule 11 colloquy" — with his interpreter. See id. at 9. The plea letter, signed and dated by Aplicano, stated that if Aplicano violated his supervised release, he "could be returned to custody to serve another period of incarceration and a new term of supervised release." Id. at 10. When questioned by the court late in the plea hearing about whether he understood the proceedings, Aplicano responded, "I understand everything." Id. at 31.

Aplicano now argues that, despite his understanding of the consequences of supervised release — which he acknowledged in the plea letter — the court inadequately advised him on the subject of supervised release at the plea hearing. Relying on our decision in United States v. Thorne, 153 F.3d 130 (4th Cir. 1998), Aplicano contends that the plea letter did "not supplant the district court's obligations" to orally explain the nature of supervised release. See Reply Br. of Appellant 6. In Thorne, we determined that the sentencing court erred by failing to properly inform the defendant of the nature of supervised

23

release, even though the written plea agreement specified that the defendant was subject to a term of supervised release. See 153 F.3d at 133.

Even if the sentencing court erred in that regard and such error was plain — satisfying the first two prongs of plain error review — a vacatur of Aplicano's guilty plea would not be warranted because Aplicano has not shown that such an error affected his substantial rights. See United States v. Olano, 507 U.S. 725, 734 (1993). That is, Aplicano has not shown a "'reasonable probability that, but for the error, [he] would not have entered the plea.'" See United States v. Sanya, 774 F.3d 812, 817 (4th Cir. 2014) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)). Importantly, Aplicano does not point to anything in the record suggesting that he would not have pleaded guilty absent the court's failure to advise him of the nature and consequences of supervised release.

Indeed, the fact that Aplicano made no effort to withdraw his guilty plea after the district court imposed the term of supervised release is compelling "evidence that he would have entered the plea regardless." See United States v. Massenburg, 564 F.3d 337, 344 (4th Cir. 2009). And there is no dispute that the prosecution's case against Aplicano was strong. See id. Accordingly, the record fails to show a "reasonable probability" that Aplicano would have refrained from pleading guilty but for

24

the assumed Rule 11 error, and Aplicano is unable to satisfy the third prong of the plain error analysis.  See id. at 343.  Thus, this appellate contention also fails.

IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

AFFIRMED

25