**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4181**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

CARLOS ANTOINE BENSON,

Defendant – Appellant.

**No. 17-4222**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

JACOB IVAN HILL,

Defendant – Appellant.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Chief District Judge. (3:15-cr-00179-FDW-DCK-1; 3:15-cr-00179-FDW-DCK-2)

Argued: September 26, 2018                    Decided: December 3, 2018

Before DUNCAN and DIAZ, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Duncan and Judge Gibney joined.

---

**ARGUED:** Joshua Brian Howard, GAMMON, HOWARD, ZESZOTARSKI, PLLC, Raleigh, North Carolina; Jeffrey William Gillette, GILLETTE LAW FIRM, PLLC, Franklin, North Carolina, for Appellants. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Carlos Benson and Jacob Hill appeal their convictions and sentences for various offenses. Viewed in the light most favorable to the government, the facts establish that Benson and Hill lured Quinton Patterson into a sham drug deal that ultimately led to the death of Darrell Hames. Finding no error, we affirm the judgment of the district court.

## I.

### A.

On November 12, 2014, Hill arranged to buy two grams of cocaine from Patterson. When Patterson arrived to meet Hill, he parked his Impala and got into the passenger's seat of Hill's Escalade. He put the cocaine on the center console, but Hill told Patterson that he "want[ed] it all." J.A. 552. At that point, Benson jumped up from the back seat, where he had been hiding, and put a gun to the back of Patterson's head.

Hill ordered Patterson to reveal the name of his dealer. When Patterson hesitated, Hill pulled out his gun and pointed it at Patterson, saying he was "not playing." J.A. 555. Patterson relented, and Hill used Patterson's phone to call the dealer, Darrell Hames, ostensibly to buy three ounces of cocaine. Hames, believing he was talking to Patterson, said to meet at the spot where they normally did their transactions.

Once he hung up, Hill asked, "Where's the spot? Where's the spot?" J.A. 557. Patterson didn't answer and was forced out of the car. Hill warned that he was "going to shoot" Patterson if he "tr[ied] anything." *Id.* at 558. Patterson returned to his Impala and

3

Benson got in the front passenger's seat, still pointing his gun at Patterson. Patterson drove to the spot and Hill followed behind in his Escalade.

When they arrived, Hill parked a short distance away and walked to a line of trees out of sight. Benson hid in the back seat of the Impala, still pointing his gun at Patterson.

Hames arrived a few minutes later. He got into the passenger seat of Patterson's Impala and placed a bag of cocaine on the center console. At that point, Benson sat up and pointed his gun at Hames, saying "Don't you fuck—don't you flinch." J.A. 577. Benson also said he "ain't playing." *Id.* Hames (who was also armed) turned around and reached for his gun. Benson then shot Hames six times, and Hames shot Benson three times. Patterson got out of the car and fled.

Benson and Hill were later apprehended by the police. When emergency personnel arrived at the scene, they were unable to revive Hames and pronounced him dead.

### B.

A federal grand jury returned a ten-count indictment against Benson and Hill. As is relevant here, they were charged with carjacking resulting in Hames's death and aiding and abetting the same, 18 U.S.C. §§ 2, 2119(3); using, brandishing, and discharging a firearm during and in relation to each of the substantive offenses and aiding and abetting the same, 18 U.S.C. §§ 2, 924(c)(1)(A)(iii); using, brandishing, and discharging a firearm during and in relation to each of the substantive offenses, resulting in Hames's death, and

4

aiding and abetting the same, 18 U.S.C. §§ 2, 924(j); and possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1).[1]

Benson and Hill were tried together. During trial, the government inadvertently displayed an unadmitted photograph (Exhibit 11D) on the jurors' monitors. That photograph depicts the back of Hames's head as he was lying on the pavement shortly after emergency personnel removed him from the car. The gunshot wound to the back of his head is apparent, and a sheet beneath his body is stained with blood. The photograph appeared on the screen for a second or two before the government removed it.

Defendants moved for a mistrial. The district court denied the motion, explaining that although the photograph was "horrible," the same is true of all photographs of decedents and it was "not nearly as horrible" as a graphic photograph the court had earlier excluded, in which Hames was partially disrobed. J.A. 478. The court also noted that the photograph "appears to be admissible evidence," even though it had not been admitted, because it was probative and not "unduly prejudicial." *Id.* at 485. The district court then instructed the jury that the photograph was not in evidence and to "[d]isregard it in its entirety." *Id.* at 488.

---

[1] Defendants were also charged with Hobbs Act robbery and aiding and abetting the same, 18 U.S.C. §§ 2, 1951; conspiracy to kidnap Patterson, 18 U.S.C. § 1201(c); kidnapping Patterson and aiding and abetting the same, 18 U.S.C. §§ 2, 1201(a)(1); conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846; possession with intent to distribute cocaine and aiding and abetting the same, 18 U.S.C. § 2, 21 U.S.C. § 841(a)(1). Benson was charged separately with possessing a firearm as a felon with three prior convictions, 18 U.S.C. § 924(e)(1).

Several hours later, the court received a note from Juror Six. She explained she was unable to focus since seeing the unexpected photograph because her son's best friend had committed suicide with a gun. J.A. 588. She was concerned she "may miss important key facts," but said she "[did] not feel this will affect [her] ability to rule this case fairly." *Id.*

The district court spoke with the juror, who affirmed that she was capable of being an unemotional and focused juror and that she would alert the court again if she had any further problems. When questioned by the defendants' counsel, she explained that the photograph caused her to be "a little distracted" but that she "just kind of needed a break" and would "be okay" and "be fair." *Id.* at 592. Defendants again moved for a mistrial, which the court denied. The court reiterated that the photograph "appears admissible." *Id.* at 594.

Later during trial, the government introduced an autopsy photograph (Exhibit 24K). This one depicted the cleaned gunshot wound to the back of Hames's head. Neither Benson nor Hill objected to the admission of the photograph.

At the close of the government's case, the defendants moved for judgments of acquittal on every count, which the court denied. Before the case went to the jury, the district court asked the parties whether they wanted Juror Six replaced with an alternate. All the parties agreed that the juror should not be replaced. After deliberating, the jury found Benson and Hill guilty of all charges. Defendants renewed their motions for judgment of acquittal, which the court again denied.

6

The district court sentenced both defendants to concurrent terms of life in prison for the kidnapping conspiracy, substantive kidnapping, carjacking, and felon-in-possession offenses; a consecutive term of life in prison for the § 924(j) firearm offense; and 240 months in prison for the Hobbs Act robbery, drug-trafficking conspiracy, and substantive drug-trafficking offenses. The district court also sentenced Benson to a consecutive term of 120 months and Hill to a consecutive term of 84 months for the § 924(c) firearm offenses.

## II.

On appeal, Benson and Hill raise four arguments: first, there was insufficient evidence of intent to support their carjacking convictions; second, the district court erred in failing to declare a mistrial where the jury was exposed to a prejudicial photograph that was never properly admitted; third, the district court erred in imposing sentences beyond the statutory maximum for their felon-in-possession charges; and fourth, their firearm convictions under 18 U.S.C. § 924(c) and § 924(j) violate the Double Jeopardy Clause. We consider each contention in turn.

### A.

We first consider the defendants' argument that the district court erred by denying their motion for judgment of acquittal on the carjacking charge. We review a district court's denial of a motion for judgment of acquittal de novo. *United States v. Penniegraft*, 641 F.3d 566, 571 (4th Cir. 2011). In reviewing the sufficiency of the evidence, we "construe the evidence in the light most favorable to the government,

assuming its credibility, and drawing all favorable inferences from it." *Id.* at 571. We "will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Id.*

To obtain a conviction for carjacking under 18 U.S.C. § 2119, the government must prove that the defendant "(1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped, or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Robinson*, 855 F.3d 265, 268 (4th Cir. 2017).

Benson and Hill contend there was insufficient evidence of intent to support their convictions. The intent requirement is met "when the government proves that, at the moment the defendant demanded or took control of the vehicle, the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." *United States v. Foster*, 507 F.3d 233, 247 (4th Cir. 2007). It is not necessary to prove that "the defendant actually intended to cause the harm; it is sufficient that the defendant was conditionally prepared to act if the person failed to relinquish the vehicle." *Id.*

Benson and Hill argue that the evidence doesn't show that they were prepared to kill or seriously injure Patterson. Rather, they contend that their behavior toward Patterson was merely "an empty threat, or intimidating bluff," which is insufficient "standing on its own" to satisfy the intent element. *Holloway v. United States*, 526 U.S. 1, 11 (1999). They reason that they could not have intended to kill or seriously injure Patterson because to do so would have defeated their overall plan—to force Patterson to take them to "the spot" known only to Patterson.

8

Perhaps a reasonable juror could draw this conclusion from the evidence. Even so, a reasonable juror could also conclude that the defendants' threats were all too real. Viewed in the light most favorable to the government, the evidence shows that both Benson and Hill pointed their weapons at Patterson and demanded that he take them to meet Hames. Hill made clear to Patterson that he was "not playing," J.A. 555, and warned he would shoot him if he "tr[ied] anything," *id.* at 558. Patterson told the jury that he complied because he "felt like if I did anything wrong I already knew he was going to kill me." *Id.* at 562. This evidence was sufficient for the jury to conclude that Benson and Hill were prepared to kill or seriously injure Patterson if necessary. *See Robinson*, 855 F.3d at 269 (finding sufficient evidence of intent where defendant grabbed victim's keys after pointing gun at victim and asking her, "Do you want to die?"); *Foster*, 507 F.3d at 247 (finding the same where defendant held gun to victim's head and ordered victim out of car).

B.

We next consider the defendants' argument that the district court erred by failing to declare a mistrial when the government inadvertently showed the jury a picture of Hames's gunshot wound that hadn't been admitted into evidence. "We review a district court's denial of a motion for a mistrial for abuse of discretion." *United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009).

A defendant is entitled to a new trial "[i]f prejudicial evidence that was not introduced at trial comes before the jury." *United States v. Barnes*, 747 F.2d 246, 250 (4th Cir. 1984). Evidence is prejudicial if there is "a reasonable possibility that the jury's

9

verdict was influenced by the material that improperly came before it." *Id.* "Furthermore, there is a presumption of prejudice where such improper evidence has been made available to the jury, and the burden is on the government to prove that it is harmless." *Id.* at 250-51. This is true even if the submission was accidental or inadvertent. *See id.* at 251.

Benson and Hill argue that the inadvertent display of the photograph was prejudicial. Specifically, they point to the fact that Juror Six sent a note to the court saying she was "having trouble focusing on the case" and was "emotionally disturbed and continue[d] to be." J.A. 588.

We accept that the photograph at issue should not have been shown to the jury. But it's difficult to see how it influenced the jury's verdict when a very similar photograph of Hames was admitted without objection from the defense. As the district court observed, although the photograph was horrible, as are all photographs of decedents, it was not "a terribly offensive photograph" and not "unduly prejudicial." *Id.* at 481, 485.

Furthermore, the district court explicitly instructed the jury to disregard the unadmitted photograph "in its entirety." *Id.* at 488. We presume the jury followed those instructions. *See United States v. Chong Lam*, 677 F.3d 190, 204 (4th Cir. 2012). And the defendants' reliance on the discomfort expressed by Juror Six is unavailing. When questioned by the court and defense counsel, the juror affirmed that she could still serve in a fair and impartial manner. Indeed, when the court offered to replace her with an alternate, defense counsel declined.

10

As a result, the government has met its burden to show that the brief display of the unadmitted photograph was harmless. We find no abuse of discretion in the district court denying the motion for a mistrial.

C.

Defendants next argue that the district court erred by imposing life sentences for their felon-in-possession convictions, where the statutory maximum sentence is only ten years. Because Benson and Hill did not object to their sentences on this basis, "we review the issue for plain error only." *United States v. Aplicano-Oyuela*, 792 F.3d 416, 422 (4th Cir. 2015). We may correct a lower court's sentencing decision on plain error review only when a defendant has established that: "(1) there is a sentencing error; (2) the error is plain; and (3) the error affects his substantial rights." *Id.* Even when this burden is met we must decide whether to cure the error, "and should not do so unless the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Benson and Hill argue, and the government concedes, that the district court's error here was plain. The court imposed a life sentence on each defendant for a violation of 18 U.S.C. § 922(g)(1), which ordinarily carries a maximum penalty of ten years in prison. A sentence in excess of the statutory maximum is a plain error. *See United States v. Ellis*, 326 F.3d 593, 599 (4th Cir. 2003).

Nonetheless, we conclude that the defendants have failed to establish that the error affects their substantial rights. To do so, Benson and Hill must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been

11

different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal

quotations omitted).  We have previously held that a district court's erroneous imposition

of a sentence greater than the statutory maximum on one offense doesn't substantially

affect a defendant's rights if he received equal or longer concurrent sentences on other

counts.  *Foster*, 507 F.3d at 251; *Ellis*, 326 F.3d at 599-600.  Because Benson and Hill

were each properly sentenced to life in prison on other counts, we are constrained to hold

that they are not entitled to relief for the district court's error.

### D.

Finally, we consider the defendants' argument that the district court violated the

Double Jeopardy Clause by entering judgments under both § 924(c) and § 924(j).[2]  The

Double Jeopardy Clause protects against "multiple punishments for the same offense."

*Brown v. Ohio*, 432 U.S. 161, 165 (1977).  A greater offense is "by definition the 'same'

for purposes of double jeopardy as any lesser offense included in it."  *Id.* at 168.

Defendants argue that § 924(c) is a lesser-included offense of § 924(j), and thus

punishment under both is a violation of double jeopardy.  Because this argument was not

raised in the district court, we review it for plain error.  *United States v. Davis*, 855 F.3d

587, 595 (4th Cir. 2017).

---

[2] Section 924(c) criminalizes using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime," or possessing a firearm in furtherance of such a crime.  18 U.S.C. § 924(c)(1)(A).  Subsection (j), meanwhile, prohibits "in the course of a violation of subsection (c), caus[ing] the death of a person through the use of a firearm."  *Id.* § 924(j).

"To be plain, an error must be 'clear' or 'obvious.'" *Ellis*, 326 F.3d at 596. (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). An error is clear or obvious "when the settled law of the Supreme Court or this circuit establishes that an error has occurred." *Id.* at 596-97 (citations omitted). And "decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain." *Id.* (citations omitted).

Although the Fourth Circuit and the Supreme Court have yet to decide the issue, some circuit courts have found that sentencing a defendant under both § 924(c) and § 924(j) violates double jeopardy.[3] Those cases, however, were based on convictions "for the same conduct." *United States v. Gonzales*, 841 F.3d 339, 357 (5th Cir. 2016). Here by contrast, the defendants were convicted of separate underlying crimes that could support both § 924 convictions: first, Benson and Hill used guns in furtherance of carjacking and kidnapping Patterson, and second, Benson used a gun (aided and abetted by Hill) while robbing Hames, which resulted in Hames's death. And where two separate firearms offenses are based on separate underlying conduct, double jeopardy doesn't come into play. *See United States v. Luskin*, 926 F.2d 372, 378 (4th Cir. 1991). Accordingly, the defendants cannot succeed on their double jeopardy claim.

---

[3] *See, e.g., United States v. Gonzales*, 841 F.3d 339, 358 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1237 (2017); *United States v. Sanchez*, 623 F. App'x 35, 38 n.1 (2d Cir. 2015); *United States v. Wilson*, 579 F. App'x 338, 348 (6th Cir. 2014); *United States v. Garcia-Ortiz*, 657 F.3d 25, 28-29 (1st Cir. 2011).

## III.

For the reasons given, we affirm the district court's judgment.

*AFFIRMED*