**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 21-4449**

———————————

UNITED STATES OF AMERICA

   Plaintiff - Appellee,

      v.

STARSHA ANN LIMBAUGH

   Defendant - Appellant.

———————————

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Henry M. Herlong, Jr., Senior District Judge.  (6:20-cr-00465-HMH-1)

———————————

Argued:  October 28, 2022                                Decided:  January 6, 2023

———————————

Before KING and HARRIS, Circuit Judges, and Michael S. NACHMANOFF, United States District Judge for the Eastern District of Virginia, sitting by designation.

———————————

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge King and Judge Nachmanoff joined.

———————————

**ARGUED:**  Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  William Jacob Watkins, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.  **ON BRIEF:** Corey F. Ellis, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Starsha Ann Limbaugh was involved in a scheme in which she and her co-conspirators stole mail from mailboxes, altered and then cashed checks they uncovered, and used the mail to obtain identification documents and credit cards in the names of other people. After pleading guilty to conspiracy to commit counterfeiting and forgery, mail theft, and identity fraud, she was sentenced to a 58-month term of imprisonment and a three-year term of supervised release. The district court also entered a forfeiture order against Limbaugh holding her jointly and severally liable for the total proceeds obtained by the conspiracy.

Limbaugh now raises three challenges to her sentence. First, she argues that the district court did not orally pronounce all discretionary conditions of her supervised release, as required by *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020). She further contends, for the first time on appeal, that the district court erroneously deferred to Sentencing Guidelines commentary in calculating the "loss" associated with her offense. And finally, she asserts that the forfeiture judgment entered against her is invalid because it relies on a theory of joint and several liability rejected by the Supreme Court in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

On appeal, the government concedes Limbaugh's last point, agreeing that the district court erred in holding Limbaugh jointly and severally liable for all the conspiracy's proceeds. We therefore vacate the order of forfeiture against Limbaugh and remand for further proceedings to determine the appropriate forfeiture amount. We otherwise affirm Limbaugh's sentence.

2

**I.**

In 2020, Starsha Ann Limbaugh and three co-conspirators were indicted by a federal grand jury in the District of South Carolina on charges of conspiracy and identity theft. The charges arose from a scheme that began with the theft of mail from mailboxes. The conspirators then used the stolen mail to obtain identification documents and credit cards in the names of other persons. They also altered checks uncovered in the mail and then negotiated them. Illustrating the scope of the operation, a search of the residence that Limbaugh shared with two of her co-conspirators turned up hundreds of pieces of stolen mail; 115 stolen checks; 76 debit and credit cards in the names of other persons; and identification documents in the names of other persons including driver's licenses, vehicle license plates, passports, and social security cards. Limbaugh was arrested twice during the conspiracy and each time was found with multiple credit cards and driver's licenses in the names of other persons.

Limbaugh pleaded guilty to the conspiracy charge against her: conspiracy to commit counterfeiting and forgery, mail theft, and identity fraud. *See* 18 U.S.C. § 371 (conspiracy); *see also id.* §§ 513 (counterfeiting and forgery), 1028(a)(7) (identity fraud), 1708 (mail theft). The probation office's Presentence Investigation Report ("PSR") calculated Limbaugh's Sentencing Guidelines advisory range as 57 to 71 months' imprisonment, based on a criminal history score of III and a total offense level of 23; a five-year statutory maximum, *see* 18 U.S.C. § 371, capped the range at 57 to 60 months. To arrive at an offense level of 23, the PSR applied several enhancements. One was based

3

on a calculation of the "loss" associated with Limbaugh's offense, *see* U.S.S.G. § 2B1.1(b)(1), which the PSR put at $248,417.69.

At sentencing, Limbaugh objected to other enhancements to her offense level, but not to the calculation of loss. The district court denied Limbaugh's objections – a ruling Limbaugh does not challenge on appeal – and adopted the PSR's findings. The court then sentenced Limbaugh to a 58-month term of imprisonment to be followed by a three-year term of supervised release, and ordered restitution in the amount of $48,844.20. The district court also entered a forfeiture order against Limbaugh, holding her jointly and severally liable, with her co-conspirators, for the total proceeds obtained by the conspiracy collectively, again amounting to $48,844.20.

Limbaugh timely appealed the district court's judgment.

## II.

### A.

In *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), we held that a district court must orally announce during sentencing all discretionary conditions of supervised release. Limbaugh first contends that the district court failed to comply with this directive, necessitating a remand for resentencing. We disagree.[1]

---

[1] The parties agree that we should review this issue de novo, notwithstanding Limbaugh's failure to make a *Rogers* objection at sentencing, with the government expressly conceding the point. *See United States v. Cisson*, 33 F.4th 185, 192–93 (4th Cir. 2022) (applying de novo review to *Rogers* claim not raised before district court, with

When the district court imposed a three-year period of supervised release at Limbaugh's sentencing, it announced that Limbaugh would be required to "comply with the standard conditions" of supervised release. J.A. 161. It then entered a written judgment memorializing its oral sentence, which enumerated thirteen "standard conditions of supervision." *Id.* at 167. Those thirteen "standard conditions" are the same thirteen "standard" conditions set out in § 5D1.3(c) of the Sentencing Guidelines – and also, for good measure, listed in Limbaugh's PSR. But because the district court judge did not refer expressly to the standard conditions recommended by the Guidelines when it announced its sentence, Limbaugh argues, it did not adequately announce the conditions of her supervised release under *Rogers*.

That argument is foreclosed by our recent decision in *United States v. Cisson*, 33 F.4th 185 (4th Cir. 2022). In that case, too, the defendant claimed that the district court did not properly announce his discretionary conditions of supervised release when it said only that it would impose the "mandatory and standard conditions." *Id.* at 194. But as we explained, *Rogers* makes clear that a court may satisfy its pronouncement obligation through incorporation of a set of conditions, like the Guidelines "standard" conditions. *Id.* at 194; *see Rogers*, 961 F.3d at 299. And an oral reference to "standard conditions" – without more – was sufficiently clear to accomplish that incorporation, we held, in a district like the District of South Carolina, which does not have a standing order

---

explanation). Because we conclude that there is no *Rogers* error in this case, plain or otherwise, our standard of review is not dispositive.

5

listing a *different* set of "standard" conditions that might cause confusion. *Cisson*, 33 F.4th at 194.

That rule governs here. Limbaugh, like the defendant in *Cisson*, was sentenced in the District of South Carolina. That means there is no district-wide standing order governing supervised release with its own set of "standard" conditions. *Cf. id.* (noting standing order in Western District of North Carolina). So when the district court, at Limbaugh's sentencing, orally incorporated by reference the "standard conditions" of supervised release, it incorporated the Guidelines standard conditions, because "there is no other set of 'standard' conditions to which the court could have been referring." *Id.* at 194.

As our reasoning in *Cisson* suggests, there may be other cases – as in districts with standing orders on supervised release – in which a bare reference to "standard conditions" will be too ambiguous to satisfy *Rogers*. And it will always be best practice for district courts, when they incorporate by reference discretionary conditions of supervised release, to specify precisely what they are incorporating. But on the facts of this case, and under *Cisson*, we conclude that the district court complied with *Rogers* by orally pronouncing the discretionary conditions of Limbaugh's supervised release.

**B.**

Limbaugh's second challenge is to the calculation of her Sentencing Guidelines range and, specifically, to the "loss" calculation that underpinned her total offense level. According to Limbaugh, in defining "loss," the district court erred in treating as authoritative certain Guidelines commentary that is inconsistent with the text of the relevant Guidelines provision itself. Because Limbaugh did not raise this objection in the

6

district court, our review is for plain error only. *See, e.g.*, *United States v. Aplicano-Oyuela*, 792 F.3d 416, 422 (4th Cir. 2015). Finding no error that would qualify as plain, we affirm.

Limbaugh's offense level was governed primarily by § 2B1.1 of the Sentencing Guidelines, which covers economic crimes including fraud, forgery, and the use of counterfeit instruments. Relevant here, § 2B1.1(b)(1) prescribes a series of incremental increases to a defendant's offense level based on the monetary value of the "loss" associated with her crime: "As the victim's monetary loss grows, so too does the enhancement to the defendant's offense level." *United States v. Banks*, 55 F.4th 246, 257 (3d Cir. 2022). Based on a "loss" amount pegged at $248,417.69, the district court applied a ten-point enhancement to Limbaugh's offense level under § 2B1.1(b)(1), raising it from 13 to 23. Limbaugh asserts – and the government does not dispute – that this enhancement significantly affected her ultimate Guidelines range.

Notwithstanding the importance of the "loss" amount to a proper application of § 2B1.1(b)(1), the "guideline itself leaves this critical word undefined." *United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021). Instead, the Sentencing Commission has provided a "detailed code" for determining loss in the commentary to § 2B1.1(b)(1). *Id.* The district court relied on two portions of that commentary here. First, the district court calculated not the "actual" loss to Limbaugh's victims but the "intended" loss, as prescribed by Application Note 3(A). *See* U.S.S.G. § 2B1.1 cmt. n.3(A) (defining "loss" as "the greater of actual loss or intended loss"). And second, to measure the "loss" associated with stolen or counterfeit credit cards, the district court followed a "special rule" set out in Application Note 3(F) that assigns a minimum value of $500 to each such card.

*See id.* cmt. n.3(F)(i).   The combined effect meant that the "loss" used to calculate Limbaugh's offense level was not the "actual loss" of $48,844.20 – the amount in Limbaugh's restitution and forfeiture orders – but an "intended loss" of $248,417.69, with the difference explained in part by recovered checks that had not yet been cashed and in part by "each of the 100 [counterfeit credit cards] receiving a loss amount of at least $500." S.J.A. 190.

Limbaugh now argues that the term "loss" as used in the text of § 2B1.1 cannot reasonably be construed to mean either "intended loss" or "$500" and that the district court therefore erred under *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019), when it applied the definitions of "loss" in the commentary.   *See United States v. Campbell*, 22 F.4th 438, 444–47 (4th Cir. 2022) (applying *Kisor* and explaining that courts may not defer to Guidelines commentary that is inconsistent with the only "reasonable construction" of a Guidelines provision (quoting *Kisor*, 139 S. Ct. at 2415)); *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that Guidelines commentary is authoritative as long as not "inconsistent with, or a plainly erroneous reading of," a Guidelines provision).

As noted above, because Limbaugh did not bring this objection to the attention of the district court, our review is for plain error only.   And under plain error review, "our authority to remedy an error is strictly circumscribed."   *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013) (cleaned up).   We may reverse only if an error is "clear" or "obvious," *id.* (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)), which generally means that the "settled law of the Supreme Court or this circuit establishes that an error has occurred."   *Id.*   To date, neither the Supreme Court nor this circuit has addressed the issue

8

raised by Limbaugh:  whether the commentary defining "loss" in Application Notes 3(A) and 3(F)(i) can be reconciled with the text of § 2B1.1's "loss" provision.  Instead, both before and after the Supreme Court's decision in *Kisor*, our court has routinely deferred to and relied on those commentary definitions in reviewing challenges to loss calculations under § 2B1.1.  *See, e.g.*, *United States v. Graves*, No. 21-4256, 2022 WL 1073863, at *1–2 (4th Cir. Apr. 11, 2022) (per curiam) (district court appropriately used intended loss to apply offense-level enhancement under § 2B1.1); *United States v. Sosa*, 773 F. App'x 140, 140–41 (4th Cir. 2019) (per curiam) (district court properly applied Application Note 3(F)(i)'s $500 minimum in calculating intended loss under § 2B1.1).  Under those circumstances, we cannot say that the district court committed a "clear" or "obvious" error in treating as valid longstanding Guidelines commentary to which the defendant did not object.

We recognize that an error may qualify as "plain" even in the absence of controlling authority from our court by virtue of a consensus in our sister circuits.  *See Carthorne*, 726 F.3d at 516 n.14; *United States v. Green*, 996 F.3d 176, 185 (4th Cir. 2021).  But we do not have that kind of consensus here.  Just one circuit has, very recently, agreed with Limbaugh that the commentary in Application Note 3(A) "impermissibly expands the word 'loss' to include both intended loss and actual loss," and should be afforded no deference under *Kisor*.  *See Banks*, 55 F.4th at 250.  And just two have adopted some version of Limbaugh's argument that Application Note 3(F)(i)'s $500-minimum-value directive is inconsistent with § 2B1.1's text and thus not binding on district courts.  *See United States v. Kirilyuk*, 29 F.4th 1128, 1138–39 (9th Cir. 2022) (applying *Stinson* and holding that $500 minimum

9

is inconsistent with word "loss" in text); *Riccardi*, 989 F.3d at 489 (applying *Kisor* to reach same result). To be clear, we take no position on the underlying merits of Limbaugh's claims, and it may be that these three cases represent the beginning of what will become a consensus view that at least some of the commentary to § 2B1.1 "sweeps more broadly than the plain text of the Guideline." *See United States v. Kirschner*, 995 F.3d 327, 333 (3d Cir. 2021) (internal quotation marks omitted) (noting but not resolving the issue). But this is a new and fast-developing area of the law, and as of now, we do not have the kind of robust consensus in other circuits that would allow us to label as "plain" any error committed here. *Cf. Green*, 996 F.3d at 185 (relying on consensus in six circuits, combined with clear statutory text, to find plain error).

## C.

Finally, Limbaugh argues that district court's forfeiture order improperly held her liable for $48,844.20, the total proceeds of the conspiracy, under a theory of joint and several liability rejected by the Supreme Court in the forfeiture context. *See Honeycutt v. United States*, 137 S. Ct. 1626, 1630 (2017). The government agrees that the district court erred in imposing joint and several liability for forfeiture purposes, and accordingly, we vacate the forfeiture order.

In *Honeycutt*, the Supreme Court held that 21 U.S.C. § 853, which mandates the forfeiture of proceeds from certain drug offenses, does not permit holding a defendant jointly and severally liable for property that his co-conspirators derived from the crime but that he himself did not obtain. *See id.* at 1630. Limbaugh's order of forfeiture was entered under a different statute – 18 U.S.C. § 981, a civil forfeiture provision made applicable to

10

criminal offenses by 28 U.S.C. § 2461 – and the courts of appeals are divided on whether *Honeycutt*'s rule extends to forfeiture orders under that statute, as well. *See United States v. Dong*, No. 17-4268, 2022 WL 595143, at *3 & n.5 (4th Cir. Feb. 28, 2022) (per curiam) (describing circuit split, declining to resolve issue, and remanding for reconsideration in light of *Honeycutt*), *cert. denied*, 143 S. Ct. 116 (mem.), 2022 WL 4652178 (Oct. 3, 2022).

But the government has conceded – consistent with its position in similar cases – that *Honeycutt* does preclude the imposition of joint and several liability under § 981. *See, e.g.*, *Peithman v. United States*, 140 S. Ct. 340, 340 (2019) (Sotomayor, J., dissenting from denial of certiorari) (noting government position that "there is no distinguishing 18 U.S.C. § 981 from 21 U.S.C. § 853 for purposes of joint and several liability" (cleaned up)); *United States v. Gil-Guerrero*, 759 F. App'x 12, 18 (2d Cir. Dec. 21, 2018) (summary order) (acknowledging government position that "the reasoning of *Honeycutt* – insofar as it rejects joint and several liability as a basis for forfeiture – also applies to forfeiture under 18 U.S.C. § 981(a)(1)(C)" (internal quotation marks omitted)). Accordingly, we need not resolve in this case whether *Honeycutt*'s rationale applies with equal force to forfeitures under § 981.[2]  Instead, we accept the government's concession and vacate the district court's forfeiture order on that basis. *See United States v. Reed*, 908 F.3d 102, 127 & n.103 (5th Cir. 2018) (vacating joint and several liability forfeiture order under § 981 based on government's concession without resolving underlying question);

---

[2] Our review of that question would be constrained by the posture of this case. Because Limbaugh did not object to the forfeiture order before the district court, we could review the matter, again, only under the plain-error standard.

11

*Gil-Guerrero*, 759 F. App'x at 12 & n.8 (same).  On remand, the district court may reassess the appropriate forfeiture amount, based on the portion of the conspiracy proceeds that actually "came to rest" with Limbaugh herself.  *United States v. Thompson*, 990 F.3d 680, 691–92 (9th Cir. 2021); *see also United States v. Chittenden*, 896 F.3d 633, 640 (4th Cir. 2018) (vacating joint and several forfeiture orders in light of *Honeycutt* and remanding for determination of appropriate forfeiture amount).[3]

## III.

For the foregoing reasons, we vacate the forfeiture order entered against Limbaugh and remand for further proceedings consistent with this opinion.  In all other respects, we affirm the district court's judgment.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

[3] We note that Limbaugh and her co-conspirators jointly and severally owe restitution in the same amount – $48,844.20 – that they have been ordered to forfeit. Limbaugh does not challenge the restitution portion of her sentence, and it may be that vacatur of the forfeiture order will "not make much of a difference" as a practical matter. *See United States v. Thompson*, 990 F.3d 680, 692 (9th Cir. 2021).  But on the government's concession, *Honeycutt* precludes joint liability with respect to forfeiture, and so the forfeiture order must be vacated.  *See id.*

12